In re Estate of William G. Cowan, deceased.   Appeal of John E. DuBois.

184   339
184   350
184   339
193   420

*Decedents' estates—Notice of claims to executors and administrators—Act of March 29, 1832.*

The proviso of the Act of March 29, 1832, P. L. 194, sec. 19, which provides that "no creditor who shall neglect or refuse to exhibit his account to the executor or administrator within twelve months after public notice given in one or more newspapers published in the county in which letters testamentary or administration have been granted . . . . and continued for four (now six) consecutive weeks, shall be entitled to receive any dividend of such remaining assets," is directory merely.   It is only a rule of administration which should be relaxed to reach the equities of all the creditors as long as such relaxation does not prejudice the representative, and does not disregard any superior equity of a particular creditor.

After an executor's account had been adjudicated, but before distribution had been made, a creditor living out of the county, and without actual

knowledge of a fund for distribution or of the audit, until final decree, presented his petition for review, and the orphans' court permitted him to present his claim, although it appeared that he had given no notice of his claim to the executor at any time within twelve months from the death of testator. It did not appear that the fund for distribution had been raised by the superior diligence of any other creditor, nor did it appear that the action of the court in any way injured the executor. *Held*, that the decree of the court permitting the belated creditor to participate in the fund should be sustained.

*Practice, orphans' court—Finding of facts by auditing judge—Review.*

A finding of fact by the orphans' court as to the novation of a contract by which a creditor of decedent's firm agrees to accept as debtor a new firm when such finding involves the credibility of witnesses, will not be reversed by the Supreme Court, except for manifest error.

*Executors and administrators—Accounts.*

Where two executors have filed separate accounts, one of which has been adjudicated and the other not, the Supreme Court, on an appeal from the decree on the adjudicated account, cannot allow a credit claimed in the unadjudicated account for a payment to a creditor to be computed as a payment to such creditor in the adjudicated account.

Argued Nov. 9, 1897. Appeal, No. 183, Oct. T., 1897, by John E. DuBois, from decree of O. C. Allegheny Co., Dec. T., 1896, No. 15, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication. Before OVER, J.

John E. DuBois, the appellant, was a creditor of the estate of William G. Cowan. His claim was paid in full by the first audit. When the decree of distribution was approved and appellees permitted to share in the fund he received but thirty-two per cent of his claim.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Geo. L. McCleary*, with him *A. V. D. Watterson* and *A. B. Reid*, for appellant.—Through their own laches and negligence in not presenting their claims to either the executors or the auditor, the petitioners have destroyed their title to equitable relief: Story's Equity Pl. sec. 414, 421; Scott's App., 112 Pa. 436; Cremers's Est., 7 W. N. C. 544.

The petitioners are barred from participating in the fund for distribution by section 19 of the act of March 29, 1832; Mitchell's Est., 2 Watts, 88; Stoever's App., 3 W. & S. 154; Hammett's App., 83 Pa. 395; Yorks's App., 110 Pa. 69; Smith's Est., 1 Ashmead, 352; Gallen's Est., 26 W. N. C. 308; Greiner's Est., 2 Watts, 417.

The dissolution by death of one of the partners puts an end to the partnership from the time of the occurrence of that event, whether known or unknown, or whether third persons have, or have not, notice thereof: Story on Partnership, secs. 153, 343; Bates's Law of Partnership, sec. 694; Shipe's App., 114 Pa. 205; Beach on Contracts, sec. 787; Regester v. Dodge, 61 Howard's Prac. 107; Tysen v. Somerville, 35 Fla. 219; Shafer's App., 99 Pa. 246; Baker's Est., 1 Del. 133.

The whole estate is liable in the hands of the executor for the payment of debts: Act of February 24, 1834, sec. 41, P. L. 70; Robins's Est., 4 Dist. Rep. 277; Springer's Est., 29 Pa. 210.

*William H. McClung* with him *John S. Robb,* for Samuel Crawford, appellee.—The provision of the act of 1832 is not to be construed literally. It is a well established rule that where the language of a statute has received judicial construction, and the same language is found used in connection with the same subject-matter in a later statute, it is to be presumed that the legislature adopted and intended to use the language in the sense, and with the meaning, that had been attributed to it previously by the courts: Smith's Est., 1 Ashmead, 352; Margate Pier Co. v. Hannam, 3 Barn. & Ald. 266; Mellon's App., 32 Pa. 129; Ross's Est., 9 Pa. 17.

*Levi Bird Duff,* with him *L. B. D. Reese,* for D. Wheeler, appellee.—The power of the orphans' court to open its decrees in a proper case cannot now be questioned: George's App., 12 Pa. 260; Bishop's App., 26 Pa. 470; McNeel's Est., 68 Pa. 412; Young's App., 99 Pa. 74; Milne's App., 99 Pa. 483; Johnson's App., 114 Pa. 132.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:
William G. Cowan, of Allegheny county, died on May 25, 1895,

leaving to survive him, a widow, Margaret A. Cowan, a son, John L., and a minor daughter, Nannie. On September 17, 1894, about eight months before his death, he made his will. Evidently he believed himself then to be possessed of a considerable estate, for he gave to his wife, Margaret, all his personal property and his residence; to his daughter, Nannie, he bequeathed the sum of $5,000, to be paid her when she attained her majority; he then gave all the residue of his estate to his wife and son, John, to be equally divided between them, and appointed them executors of his will. As it turned out the estate was largely insolvent. For some time before his death, he had beeñ in partnership with his son, in a wholesale lumber business in Pittsburg. After his death his widow and son continued the partnership in the old firm name of William G. Cowan & Son, but a new set of books was opened, and all the transactions of the new firm were kept in the new books, whether they related to the old or the new indebtedness. Printed notices were mailed to all having dealings with the old firm, announcing the death of the senior partner; that John, the surviving partner, would adjust the partnership accounts, and that a new partnership had been formed by Mrs. Cowan and her son for the continuation of the business. Notice of the granting of letters testamentary, in the usual form, was duly given by publication in the Pittsburg Dispatch, once a week for six successive weeks from June 13, 1895.

Before the death of the father, W. G. Cowan & Son had delivered to Samuel Crawford promissory notes amounting to $2,210.58; they also owed him a balance on open account of $1,551.08. The notes given by the old firm were paid; the open account was closed by delivering to Crawford notes of the new firm. The old firm had also entered into a contract, on March 8, 1895, more than two months before the father's death, with D. Wheeler, of Reynoldsville, for the purchase of over 2,000,000 feet of lumber in stock at Reynoldsville, at the price of $7.50 per thousand, board measure free on board cars, the lumber to be shipped as ordered by Cowan & Son, to be paid for by two notes in advance, each of $1,000 at three and four months, these to be credited on first shipments, and thereafter, the shipments to be paid for monthly, with three months' notes. At the death of William G. Cowan, the old partnership owed Wheeler on this

contract $4,312.32, for which Wheeler held four $1,000 three months' notes not yet due; the balance, $312.32, stood as an open account. The first two notes for the advance payment were paid at maturity. The other two were taken up with notes of the new firm, and these were several times renewed in part, and part paid. Wheeler continued the shipments up until after August, 1895, his total shipments being 1,800,000 feet, and the contract price of same, $14,474.90, of which amount, as before noticed, $4,312.32 had been shipped in the lifetime of W. G. Cowan. The claim of this appellant is on judgment 295, October term, 1896, for $1,812.18, against W. G. Cowan, deceased, and the amount is not contested. He alleges that the Crawford claim should be, wholly, and the Wheeler claim, in large part, treated as debts of the new firm, and are not entitled to share in this distribution. The new firm failed about March, 1896, and is conceded to be altogether insolvent. Whatever may have been the value of the interest of William G. Cowan in the old firm, on May 25, 1895, by the action of the executors and surviving partner in blending the accounts of the old with those of the new firm, that value seems to have wholly disappeared. On October 10, 1896, in obedience to a citation, Margaret Cowan, one of the executors, filed her first and final account, showing a balance for distribution of $4,038.90. This was made up of $200 personal property, and $4,500, an interest of decedent in another partnership, from which was deducted the ordinary expenses of administration. On November 21, 1896, John L. Cowan, her coexecutor, also filed his first and final account. He charges himself with receiving $56,751.04. This is made up of cash on hand, $726.30, bills receivable, $3,392.08; accounts receivable, $4,392.66; cash from partnership interest of decedent in Seifert, Cowan & Hamilton, $4,500; interest in Cowan, Ahlers & Co., $4,800. He then claims credit for $56,859.33, leaving a balance due him of $108.29. Exceptions were filed to both accounts, and after notice to creditors, Margaret's was audited by Judge OVER on January 19, 1897, and decree entered January 25, 1897. By this decree, after paying expenses of audit, and all proved claims of creditors, there was a balance of $663.90 which was awarded to Nannie J. M. Cowan, the minor daughter, on account of her legacy. Neither the Crawford nor Wheeler claim was laid before the

auditing judge at this hearing. He directed that the schedule amounts be paid the distributees, unless an appeal was taken within twenty days. Within that time, on February 3, 1897, Wheeler presented his petition to the court praying that the decree be opened and that he be allowed to prove his claim. The petition set out an indebtedness of W. G. Cowan & Son, the old firm, unpaid of $2,287.71; that petitioner was a resident of Reynoldsville, Jefferson county; that he had no notice of the filing of the executor's account, nor of the audit; that the first knowledge he had of the adjudication was the final decree. A citation was awarded to the executors and other creditors to appear and show cause why the decree should not be opened, to which answers were made by the executrix and Du Bois, this appellant, averring the estate was not indebted to Wheeler, and further denying his right to come in on the fund after audit and final decree, because he had not delivered to the executors within twelve months from publication of issue of letters testamentary, a statement of his claim. Afterwards, on April 13, 1897, Crawford presented a similar petition, to which a like answer was made by the executrix and creditor.

The auditing judge, after hearing, opened the decree and passed on the claims. His action was founded on a rule of the orphans' court, as follows : " Exceptions may be filed by leave of court to any adjudication of audit, within twenty days after such adjudication shall have been entered." As Wheeler's petition was presented within the twenty days, and Crawford's while proceedings were pending on that petition, the learned auditing judge was of opinion that although Crawford and Wheeler had neglected to exhibit their claims to the executors within twelve months, and to lay them before the auditing judge, this arose from the failure of the executors to file a correct inventory showing assets, and from ignorance as to an audit for distribution; and while deciding that the claims of creditors already adjudicated and allowed could not be affected because of the proviso to the act of March 29, 1832, nevertheless legatees were not protected by that act, and that as concerned the award of the balance, $663.15, to the daughter, they were entitled to share pro rata in that sum, and so decreed. The act invoked is as follows :

" . . . . Whenever there shall not be sufficient assets to pay all

the debts of the decedent, it shall be the duty of the orphans' court having jurisdiction, upon the application of the executor or administrator, to appoint auditors to settle and adjust the rates and proportions of the assets to and among the respective creditors according to the order established by law: Provided, nevertheless, that no creditor who shall neglect or refuse to exhibit his account to the executor or administrator within twelve months after public notice given in one or more newspapers published in the county in which letters testamentary or administration may have been granted . . . . and continued for four (now six) consecutive weeks, shall be entitled to receive any dividend of such remaining assets."

The decree was made July 24, 1897. Exceptions were filed by Wheeler and Crawford to the adjudication, alleging error in not distributing the whole fund pro rata among all the creditors. On hearing before the court in banc, it was decided, HAWKINS, President Judge, delivering the opinion, that the proviso to the act of 1832 did not bar Wheeler's and Crawfords' claims to share pro rata in the whole fund, saying:

" No case has been found in which failure to notify the administrator has been made a ground of refusal to allow a claim presented at the audit, and it would be strange indeed if such case had been found. On the death of a debtor his estate passes into the grasp of the law for the purpose of administration and distribution; and his creditors, like any other suitors, are entitled to their day in court, and to judicial sanction. The sole object in requiring notice to be given administrators is to enable them to ascertain the status of claims with a view to the audit. Their duties are ministerial, not judicial. If it be apparent that no injustice will result from failure to give notice to them, there is no reason for the exclusion of the creditor from sharing in the distribution. Forfeitures are odious to equity as to law. There is an established principle that where as here the thing to be done may as well be done after as before the time prescribed, where it is a matter of manner, order or convenience, rather than of substance, the courts assume the legislative intent to have been merely directory: Dwarris on Statutes, 222."

This is a clear and concise summing up of the view we take of the law on the question, and the proper construction of the

proviso to the act of 1832. The case relied on by the auditing judge as holding otherwise, Mitchell's Estate, 2 W. 88, does not itself stick to the letter of the act. True, in that case, the money had not been actually paid out, but the assets had been marshaled and distributed, and the subject referred to auditors for a special purpose; the court held, under the facts of that case, that the demand of the creditor was not in time, because it had not been exhibited to the administrator within twelve months, as required by the act of 1794, but in so deciding, says: "We would not wish it to be understood that if a claim is made to the administrator after the expiration of twelve months, but before audit, a creditor would be postponed. That, although within the letter, would perhaps be a hard construction of the act."

Then, in the latter part of the opinion, the real intent of the act is announced in these words: "This is not strictly an act of limitation, but a direction made for the benefit of administrators." The same construction is given the act by Judge KING, in Smith's Estate, 1 Ashmead, 352, thus: "The object of the act was to secure the administrators of insolvent estates from further liability to creditors after they have distributed the assets according to law. . . . If the notice required by the act has been given, and any creditor neglects to exhibit his account, and the assets are apportioned and distributed before notice of his claim, his remedy against the administrator is gone forever. . . . The law is but an act of limitation, intended to protect the administrator after he has distributed the fund in the time and manner prescribed by law."

Therefore, as long as the personal representative for whose protection the proviso was enacted is not prejudiced, it will seldom happen that equity will not permit the bona fide creditor to come in on the fund. Admit the full force of the rule, that the law favors the vigilant creditor, it does not follow that the lax one is to be outlawed in a distribution of the assets of a decedent's estate, which the law declares shall be distributed among all the creditors, merely because he is not vigilant. Speedy distribution is to be favored, but this must be had with due regard to the circumstances where, as here, the inventory showed only trifling assets; where the creditors resided remote from the court of adjudication; where the law required publi-

cation only in a newspaper published within the county; where no portion of the fund had, at least legally, been paid out under the first order of distribution. The court below was clearly right in holding that Wheeler and Crawford were not too late in presenting their claims. The orphans' court doubtless may, on the facts presented even where the fund is still in court, refuse to open a decree for distribution. Where the belated claim on its face, is not a meritorious one; where a vigilant creditor, at great trouble and expense, has succeeding in swelling the assets of an insolvent estate, and has had his claim passed on and award made, then the negligent creditor with knowledge of the proceedings before the money is actually paid out, comes in and asks to share pro rata in the fruits of the other's vigilance, the orphans' court, as a court of equity, may well decline to open the decree. But there is nothing like that in this case. The status of the claims of all creditors under the law was fixed as of the date of decedent's death; all then had an equal claim to the property from which this fund was realized; no one of them lost his right in the distribution, unless by his supineness or negligence, and that now to assert it would prejudice some other right, or occasion inconvenience and loss to the personal representatives. And this has been the uniform course of the decisions in this Court since Mitchell's Estate, supra; and an experience of more than twenty years on the bench satisfies us that it has been the uniform practice of the orphans' courts of the state. The proviso is directory, is only a rule of administration, and should be relaxed to reach the equities of all the creditors, as long as such relaxation prejudices not the representative, and disregards no superior equity of a particular creditor.

All the authorities cited, tending to show that if laches or negligence on the part of the creditor appear, the court will not open the decree, do not apply to these facts. The auditing judge refused to find negligence on part of these creditors. He assumed as a fact that they were ignorant of the existence of the fund, and had neither notice nor knowledge of the audit. If they had known of a fund for distribution, and had knowledge of the audit, then neglected to lay their claims before the auditing judge, an entirely different question would have been presented. Under such circumstances no court of equity would have been moved to open the decree.

The court below sustained the exception to the decree of the auditing judge and directed a pro rata distribution of the fund among all the creditors, including Crawford and Wheeler. When their claims were admitted, the insolvency of the estate was demonstrated, and the Du Bois judgment, instead of being paid in full, was awarded, along with other creditors, only about 32 per cent, and thereupon he brings this appeal, assigning thirteen errors, which in substance may be reduced to three. 1. The court erred in not holding the claims of Crawford and Wheeler were barred by the proviso of the act of 1832.  2. In not finding as a fact that there had been a novation by consent of the parties, whereby Crawford and Wheeler had released the old firm from all obligations, and had accepted the new one as their debtors.  3. The court erred in not computing in the distribution the sum of $4,000 paid by John L. Cowan, one of the executors, to Wheeler, and which sum the executor took credit for in his account filed.

As to the first, that the court erred in its construction of the act of 1832, we have already expressed our opinion, and concur with the court below in its judgment on that question; all the assignments bearing on it are overruled.  As to the second, the alleged novation whereby the debt of the old firm was extinguished and, by agreement of the parties, was assumed by the new one, there is much evidence tending to establish this allegation; some of it is scarcely explicable on any other theory; yet all writings and the witnesses were before the auditing judge, and he fails to find that Crawford accepted the new firm as his debtor, and finds that Wheeler did not, except as to deliveries of lumber after August 24, 1895.  While the correctness of this finding of fact is doubtful, we cannot say there is manifest error.  There is evidence to sustain it, especially that of the two creditors, corroborated to some extent by the testimony of the surviving partner, John L. Cowan; but the conduct of the parties and the accounts and writings are very significant to the contrary.  Nevertheless, we will not overrule on a finding of fact, especially one involving the credibility of witnesses, unless it be manifestly erroneous.  As to the third assignment of error, alleging that $4,000 paid Wheeler, for which John L. Cowan claims credit in his account as executor, should in this audit be computed as paid Wheeler on his claim, we can only say that

account is not before us.   This is an appeal from a final decree
of the account of Margaret A. Cowan; nor does it appear that
John's account as executor has ever been finally adjudicated,
nor that he ever settled, as surviving partner, the partnership
accounts.   It is very clear that John should not have a credit
as executor for the amount of the pro rata allowed on the bal-
ance in the hands of Margaret A. Cowan; it is equally clear
that whatever money was paid Wheeler by the surviving part-
ner after the death of his father on a debt of the father's should
be computed as paid on his claim against the estate.   It is im-
possible, however, in the absence of an adjudication of John's
account as executor to determine what money is properly to be
credited as a debt of the father's.   Much of the confusion in
these accounts arises from the neglect to compel a full settle-
ment by John, the surviving partner, of the partnership accounts
first, and thereby determining the value of the father's interest
in that partnership.   Starting with this, either as an asset or
liability in the account of John, as executor, there could not
have arisen the present complication.   If there be any ground
for complaint raised by this third assignment it can be heard
and adjudged in the final hearing on John's account as executor,
and it ought to be disposed of there.

The assignments of error are overruled, the appeal dismissed
and the decree of the court, of September 28, 1897, is affirmed
absolutely.   Costs to be paid by appellant.