Ray's Estate.

Argued March 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles C. Crowell,* with him *Howard H. Whitehead* and *Dan V. Crowell,* for appellant.

*Scott Fink,* for appellees.

OPINION BY MR. JUSTICE LINN, April 20, 1942:

This appeal is from the refusal to surcharge executors on appellant's claim, as a creditor, for a balance of $12,230, and interest, on a judgment entered on a bond

accompanying a mortgage, presented at the audit of the account of the executors of William T. Ray. The testator, a resident of Irwin, Westmoreland County, died May 10, 1928. The executors duly advertised their appointment, etc., and filed an inventory showing personalty appraised at $49,981.34, and two parcels of real estate, one, known in the record as a business place, appraised at $50,000 and the other, a residence appraised at $4,000. The estate, appraised at $103,981.34, had a clear value of $29,995.67, on which inheritance taxes were paid to the Commonwealth on August 10, 1928.

The executors filed no account until October 21, 1940. Among other debts, decedent owed Abe Frank on a first mortgage of $19,000 secured on the business place, and John W. Thompson, the appellant, a second mortgage of $20,000 on the same premises. In 1929, the executors, until then conducting the business left by decedent, paid, out of personalty, $6,000 to Frank and $10,000 to Thompson in addition to the interest on the mortgage debts. In 1932, the first mortgage, held by Frank, was foreclosed and the property was sold for $15,500 to appellant Thompson, holder of the second mortgage; the proceeds paid the debt to Frank. The situation then was that Thompson's debt had been reduced to $10,000 by the cash payments made in 1929 and he had bought the property at the foreclosure of the first mortgage; he also had judgment entered against Ray on the bond in his lifetime. Proceeding on that judgment in 1938, he caused the residence to be sold and purchased it for $1.00, costs and taxes, aggregating $1,382.88. After repairing it, he sold it November 25, 1939, for $4,500.

Between the time letters testamentary were received in May, 1928, and the filing of the executors' account in October, 1940, decedent's estate became insolvent; just when, does not appear. The executors, in their account, claimed credit of $51,258.79 for debts paid and expenses of administration, an excess over available assets of $585.93, which they claim to be due them; one of the

accountants testified that all debts (excepting appellant's claim) had been paid. As we understand the record, legatees have received nothing.

The learned court decided that, as Thompson had not given the executors notice of his claim within six months of their receipt and advertisement of letters testamentary, section 49(b) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS section 862, prevented surcharge. The appellant challenges that interpretation of the Act and relies on *Ivison's Estate,* 101 Pa. Superior Ct. 326; *Glass' Estate,* 115 Pa. Superior Ct. 448, 175 A. 736; and *Free's Estate,* 327 Pa. 362, 194 A. 492. There are general expressions in the opinions in those cases furnishing some support to his contention, but this record requires that we examine section 49 somewhat more closely.

Section 49(a) provides that distribution of an estate cannot be compelled until the expiration of six months from the granting of letters, after which period, it may be ordered.

Section 49(b) provides: "Executors or administrators may make distribution, and pay or deliver legacies, without the audit of their accounts, upon such security as may be satisfactory to them, nevertheless at their own risk, but without liability to any creditors of the decedent who shall not have given written notice to the executor or administrator within six months after the granting of letters testamentary or of administration, provided that such executor or administrator has complied with the provisions of section ten of this act. Where distribution of a decedent's estate is awarded by the orphans' court, after audit and confirmation of any account of the executors or administrators, such decree of distribution shall protect the executors or administrators from personal liability with respect to the property so distributed. In making distribution under such a decree the executors or administrators shall not be entitled to demand refunding bonds from the distributees, except in the cases specially provided for by this act, and

in other cases in which the court shall direct the giving of refunding bonds."

Section 49(c), not now involved, provides for distribution where the personal estate is less than $300. Section 49(d) deals with neglect or refusal of a creditor to present his claim, at the audit.

Section 10 (20 PS section 441), referred to in section 49(b), provides: "The executors or administrators of every decedent shall, immediately after the granting of letters testamentary or of administration to them, cause notice thereof to be given in one newspaper published at or near the place where such decedent resided, and in the legal periodical, if any, designated by rule of court for the publication of legal notices, once a week during at least six successive weeks, together with their names and places of residence; and in every such notice they shall request all persons having claims or demands against the estate of the said decedent to make known the same, and all persons indebted to the said decedent to make payment to them without delay."

Section 49(b) provides for several contingencies, among them, personal liability of the fiduciary and how that personal liability may be discharged; it also imposes on creditors the duty to give timely notice of claims to facilitate prompt administration of the estate. Prior to, and since, the Act, it has been common for executors and administrators to collect claims, pay debts and make distribution without accounting or audit.* In some counties accounts are confirmed as of course if no exceptions are filed within specified periods; in others, formal confirmation by the court is pronounced on presentation of accounts to which no exceptions have been filed. Automatic confirmation pursuant to a rule of court is not an audit.

The first part of section 49(b) authorizes the fiduciary to administer at his own risk, that is, with per-

---

* Mr. Remick says that about 40% of the estates in Philadelphia are wound up without formal accounts: Remick, Pennsylvania Orphans' Court Practice, Vol. 1 (3rd ed.), p. 402, n. 6.

sonal liability; the second part of section 49(b) provides how he may avoid that risk. According to the first part, he administers at his own risk without an audit, *but it is expressly provided that such action shall be without personal liability to that class of creditors who have not given notice within the six months' period.* Though expressly relieved from personal liability to such dilatory creditors, he remains liable to diligent creditors, legatees and next of kin for distribution, and to protect against this personal liability he may require refunding bonds. The second part of section 49(b) provides that he may avoid personal liability to *all* creditors and distributees by obtaining a decree confirming his account of administration and distribution.

The use of the words "without the audit of their accounts" in the first part of section 49(b) identifies the class of fiduciaries who elect to distribute at their own risk as distinguished from the class distributing "after audit and confirmation," and necessarily includes those *who file no account* as well as those who file accounts that are not audited and confirmed. An account that is not confirmed will not relieve from liability, a result obviously recognized by the legislature because in the second part of section 49(b) it is provided that on audit and confirmation the fiduciary shall be relieved without refunding bonds except in special cases. Section 49(b) distinguished unaudited administration from audited administration sanctioned by a decree; the emphasis is on audit and confirmation and not on the filing of accounts. For present purposes, it is convenient here to designate the two classes as risk-distribution and non-risk-distribution.

How does this construction operate on creditors' claims? Just as section 49(b) contrasts risk-administration with non-risk-administration, it contrasts two classes of creditors: those who give notice within the six months' period, whom we may designate as diligent creditors, with those who do not give such notice, who

may be called dilatory creditors. No creditor who has failed to present his claim within the six months' period can receive anything out of funds distributed (1) because the first part of the section is a positive declaration that distribution shall be "without liability" to such creditors, and (2) because the second part of the section makes the decree conclusive as to the fund then before the court (also see section 49d). The dilatory creditor has lost his right to assert the *personal liability of the fiduciary,* though he may claim against assets subsequently accounted for: section 49(d).

The point for decision in the *Ivison, Glass* and *Free* cases presented a different question. In *Ivison's* case, there was no will; an administratrix, who was also next of kin, paid the debts of which she had six months' notice, that is, the diligent creditors, and retained for herself the balance of the decedent's estate. But, in response to an order, she filed an account showing undistributed assets; a claim against this undistributed balance was allowed to a dilatory creditor. It was the first account; it showed undistributed assets; the claim was proved and allowed against the estate. That was the decision.

In *Glass' Estate,* there was a will; the executor was also a legatee and entitled to the residue. He paid all diligent creditors and made distribution to legatees and retained the residue as his share. On a dilatory creditor's petition, he filed an account blending distribution and administration, etc. An auditor restated the account correctly and showed a balance remaining for distribution. The creditor's claim was allowed out of that balance.

In *Free's Estate,* the executor used a *trust fund* which he was required to restore to its owners, who had given timely notice.

If general expressions in the opinions in those cases are inconsistent with what we now hold, to that extent they are disapproved. If an account shows assets for distribution, the failure of a creditor to give the six

months' notice will not exclude him from sharing in the undistributed assets (section 49d). But allowing the dilatory creditor a right to share in undistributed assets is a very different thing from imposing at his instance a personal surcharge against the fiduciary who has distributed pursuant either to the first or the second part of section 49(b). Creditors who have presented their claims within six months may claim against the fiduciary personally unless his account has been confirmed by the orphans' court; creditors who have not presented their claims within six months have no personal claim against fiduciaries whether or not accounts have been audited and confirmed.

While a creditor's failure to present his claim in time relieves the fiduciary of personal liability, it does not exclude such creditor from sharing in the balance for distribution shown at any audit of the accountant at which the claim is presented. Claims may be presented at any audit prior to confirmation or decree of distribution and may be allowed out of property of the decedent then available for distribution (section 49d) because the six months' period for presenting claims is not an absolute period of limitation, but relative in the circumstances; it is intended to protect the administrator but not in all circumstances to bar the creditor. In *Smith's Estate,* 1 Ashmead 352, the subject was considered by President Judge KING; see also *Cowan's Estate,* 184 Pa. 339, 346, 39 A. 59. Section 48, providing for review within five years after final decree, or for fraud, is general and available to any creditor or parties entitled.

In the present account, it appeared that all the debts, except appellant's, had been paid; that there was no balance for distribution and that, on the contrary, there was due to accountants $585.93. It also appeared that appellant was in the dilatory class of creditors, the class as to which accountants were relieved from personal liability by the first part of section 49(b). If the account had shown assets for distribution, appellant, but for

laches, might have been entitled to share, though it is unnecessary to decide whether he would or not, and the case, in its facts, might have resembled the Superior Court cases relied on. As appellant was in the class of dilatory creditors, and as there are no assets for distribution, the accountants are relieved from personal liability.

Having reach this conclusion it is unnecessary to consider the objection raised by appellee in his answer to appellant's exceptions to the account that the claim was barred by laches, though, we may add, our study of the record shows that if the case turned on that point, there would be no difficulty in demonstrating that laches appeared.

Decree affirmed at appellant's costs.