## Mumbauers' Estate

*Julian W. Barnard,* for accountants.
*Samuel D. Conver,* for exceptant.

HOLLAND, P. J., November 4, 1942.—Decedent died February 13, 1936. She left a will dated October 6, 1931, probated on February 20, 1936, on which letters testamentary were granted to accountants. The will gave the entire estate to accountants in equal shares.

The account was filed March 5, 1938, by order of court upon exceptant's petition for citation. Accountants charge themselves with $2,116.55 in cash, and claim credits for disbursements equaling receipts. No balance for distribution is shown.

Exceptions to the account were filed March 29, 1938, by First National Bank of Lansdale. Exceptant is a judgment creditor of Edgar A. Sellers, one of the accountants, and had garnished his interest in decedent's estate in the hands of himself and his wife as executors, by attachment execution. The exception is to credit claimed in the account for $1,582 paid to L. Morris Sellers on February 9, 1938.

What actually took place in the administration of this estate, if the word "administration" may be used here, is not to be found in the account. According to the testimony, the following occurred:

Decedent was an aged, unmarried lady. She lived with accountants, her second cousins, for several years before her death. L. Morris Sellers is one of accountants' sons, and Laverne H. Dotts is their son-in-law. At her death, decedent's entire estate consisted of a savings bank account with the Union National Bank of Souderton, in the amount of $2,107.79. On March 14, 1936, a month after decedent's death, Dotts took accountants to the bank. They consulted an official about withdrawing decedent's entire account. Interest of $8.76 was added, and the bank's check for $2,116.65 was issued, payable to accountants, thus closing the account. This check was immediately endorsed by accountants and was given by them to Dotts. Later on the same day he deposited the check to the credit of his own personal account with the Hatfield National Bank.

Mr. Dotts was also the undertaker who buried decedent. The account shows that $486.25 was paid him by accountants on March 13, 1936, as "undertaker". He testified that he did not then or at any other time draw a check to himself on the estate funds in his possession, but that he simply retained that amount for himself to cover his bill.

The payment excepted to is described in the account as being for "moneys advanced by him [L. Morris

Sellers] to Josephine M. Sellers and Edgar A. Sellers for board of decedent from September 30, 1931, to February 13, 1936, 226 weeks at $7 per week." Actually, on April 15, 1936 (two months after decedent's death), Dotts drew a check on his above-mentioned account, to the order of one John Schingler, for $1,500, and sent it to Mark Sellers. Schingler had called a mortgage in that amount on the home of L. Morris Sellers. Mark Sellers is another son of accountants. This procedure was at Morris Sellers' request. Several days later Dotts gave Morris Sellers $82 in cash.

The reason given why accountants turned over the estate funds to Dotts is this: Accountants had still another son who had in the past victimized his parents in other money matters. The other children feared that if accountants retained the money in their own control this son would lose no time in getting his hands on all or a part of it, although the parents were fiduciaries. Therefore Mr. Dotts decided to act as conservator.

The notice of the grant of letters testamentary required by section 10 of the Fiduciaries Act of June 7, 1917, P. L. 447, was not given. There is no direct testimony on this point. However, the proofs of publication of such notices were not filed at the audit; nor does the account include the cost thereof as administration expenses. The finding that the notice was not given is therefore justified.

There is no evidence that exceptant gave notice to accountants of any claim against the estate prior to service upon them of the writ of attachment execution, on November 5, 1937.

This case is within the apparent scope of Ray's Estate, 345 Pa. 210 (1942). Here, the administration is even more clearly a "risk-administration" than there. Nothing in the opinion of Ray's Estate expresses or implies that a fiduciary who fails to advertise the grant of letters as required by the Fiduciaries Act

can obtain any protection, even against a "dilatory creditor".

Does it make any difference that the claimant in Ray's Estate was a creditor of decedent, whereas here claimant is a creditor of a legatee?

An interest in a decedent's estate is expressly made subject to attachment and levy in satisfaction of a judgment by the Act of April 13, 1843, P. L. 233, sec. 10, 12 PS §2269. An attaching creditor of a distributee has a standing to except to an account: Reese's Appeal, 116 Pa. 272 (1887). While no appellate court appears to have passed on the question whether such a creditor can petition for a citation to compel an account to be filed, several lower court cases have so held: Raeder's Estate, 10 Dist. R. 282 (1901); Agnew's Estate, 8 Dist. R. 699 (1899); Manigle's Estate, 11 Phila. 39 (1875). Section 46(a) of the Fiduciaries Act provides that an executor may be cited to file his account "on petition of any person having an interest . . . in the estate of the decedent. . . ." The statutory right to attach a distributee's interest, and the right to file exceptions would both be illusory if the right to cite the filing of the account did not also exist. Where C is a judgment creditor of D, and G holds property belonging to D, there is no duty on G to refrain from turning over that property to D simply because C might, in the future, garnish that property in his hands. Whether or not C takes anything by his attachment depends solely upon whether or not G still holds D's property. But where G is an executor, and D's property is an interest in the estate of which G is fiduciary, does the same test apply? There must be a point of time, somewhere, up to which C's attachment is in due time, and after which it is too late. Then, not only the law of attachment execution, but also the law of decedents' estates is involved. Unless the point of time is determined according to the law of decedents' estates, C's statutory right to attach-

ment may be nullified. If C is not entitled to rely upon the orderly administration of the estate, G is in position to defeat him by making distribution the next day after decedent died, as easily as three months thereafter. Clearly, C must be allowed some time within which to learn of decedent's death and D's interest therein, and to issue his attachment. No more logical or just method for determining that appears than by the same standard applicable to any other person having a claim against the estate. The present case is far stronger than this illustration, as here D and G are one and the same person.

Ray's Estate rests upon construction of sections 10 and 49(b) of the Fiduciaries Act. Section 49(b) gives the fiduciary who has made distribution protection from personal liability only against creditors of the decedent who have failed to give written notice of their claims within six months. Hence, even if accountants had duly advertised the grant of letters, Ray's Estate would not control unless an attaching creditor of a legatee is the equivalent of a creditor of decedent within the meaning of section 49(b). That question, being unnecessary, is not decided.

Even if the account now showed, as it should, a balance of $1,582 for distribution, exceptant would not be entitled to any part thereof as against a creditor of decedent. Testimony was introduced at the hearing to establish L. Morris Sellers as a creditor of decedent. Numerous checks were offered in evidence showing payments by Morris to his parents, in irregular amounts, at irregular times. However, accountants were dependent upon their children for support. Morris gave them money before decedent went there to live as well as after she died. There is no evidence to support a finding of fact that for 226 weeks he paid $7 per week for decedent's board and lodging over and above what he would have paid his parents if decedent had not been there. At best this evidence is so vague and un-

convincing that the verdict of a jury in the alleged creditor's favor could not possibly be sustained, and any claim of L. Morris Sellers as a creditor would therefore be dismissed. The accountants are, accordingly, surcharged with $1,582. Transfer inheritance tax is payable at the collateral rate plus interest from one year after the death of executrix, and the accountants, as legatees, would each be entitled to one half the balance. Exceptant's judgment and attachment are against the share of Edgar A. Sellers, only.

The account as modified by this adjudication is confirmed, and it is ordered and decreed that Josephine M. Sellers and Edgar A. Sellers, executors as aforesaid, forthwith pay the distributions herein awarded.

And now, November 4, 1942, this adjudication is confirmed nisi.