## Malvestuto Estate

*John A. Mullican* and *Gilfillan, Gilpin & Brehman,* for petitioner.

*John M. Doodan,* contra.

KLEIN, P. J., January 4, 1962.—Laura Malvestuto died on March 16, 1958, while a patient in Albert Einstein Medical Center, leaving a will which was admitted to probate on April 1, 1958, when letters testamentary were granted to her son, Paul Malvestuto. Under the provisions of the will, decedent left her home, 784 North Croskey Street, to Paul, on condition that he pay his brothers, Salvatore and Pasquale, the sum of $500 each. She left a broadtail jacket to her sister, Romuna, and the residue of her estate to Paul.

Shortly after the grant of letters, the Medical Center notified the executor that a balance of $316.12 was due for the hospitalization of decedent. Two months thereafter, on July 23, 1958, the executor executed a judgment note in favor of claimant for $306.82, personally guaranteeing payment of the unpaid bill. On October 3, 1958, the executor paid claimant $316.12, being the total amount then claimed to be due from decedent's estate. He neglected, however, to ask for the return of the judgment note which he had signed.

Apparently, the Croskey Street property was the sole asset of value, as the inventory filed by the executor showed that decedent at the time of her death was possessed of personalty in the amount of $50 only.

As executor, Paul believed that he had carried out the terms of his mother's will, because he paid the two legacies of $500 each to his brothers, delivered the fur jacket to his aunt, paid the transfer inheritance taxes due and the claim of the Medical Center for his mother's hospitalization.

On February 18, 1961, more than two years after the executor paid in full the amount of the bill presented by the center, it notified him that judgment had been entered on the note he had given them, in the Municipal Court of Philadelphia, in the amount of $402.85, made up as follows:

| | |
|---|---|
| Amount of judgment note | $308.62 |
| Attorney's fee | 46.94 |
| Interest | 47.94 |

The letter also stated:

"The judgment of $402.85, bears interest at the rate of 6% per annum, which is $2.01, per month, and is a lien on premises 748 N. Croskey Street, Philadelphia, Pa., which you own, and any and all other real estate you may own. The hospital also has the right at any time to execute against any and all of your personal

property, such as automobiles, television sets, furniture, etc."

The executor thereafter promptly filed a petition to open the judgment, and this matter is presently awaiting disposition in the municipal court (now known as the county court).

In spite of these pending proceedings in the county court, the Medical Center, on August 23, 1961, filed a petition in the orphans' court claiming a balance of $396.36, with interest from September 16, 1958, upon which a citation issued to show cause why Paul Malvestuto, the executor, should not file an account of his administration of his mother's estate. A responsive answer was filed by the executor in which he denies that any sum is due claimant and avers that an account is unnecessary as the same claim is now being litigated in the municipal court.

No one but a creditor of an estate, or a party interested therein, has the right to a citation upon a personal representative to file an account: Lightner's Estate, 144 Pa. 273 (1891). The facts in the present case are so unusual that we cannot accept the claimant's unsupported statement that the estate is indebted to it. We must proceed with caution before we order the executor to file an account, which will involve considerable expense and may prove to be wholly unnecessary.

There can be no question that in Pennsylvania a personal representative is ordinarily under a duty to file an account of his administration, and he can be cited to file an account by any party in interest if he fails to do so. The latest enactment on this subject is found in section 701 of The Fiduciaries Act of April 18, 1949, P. L. 512, as amended August 17, 1951, P. L. 1258. Because of this mandatory provision in the law, it has been the practice of the courts usually to direct an accounting if the petitioner presents a prima facie case: Bennicas Estate, 79 D. & C. 299 (1951).

This rule is not an inflexible one, however. The right to an accounting depends, in a large measure, on the facts of each case.

Many estates are administered and distributed without an account being filed, in order to save the costs and other expenses entailed in a formal accounting. The rule of Ray's Estate, 345 Pa. 210 (1942), has been recognized and adopted by the legislature in section 732 of The Fiduciaries Act of April 18, 1949. A personal representative may distribute the personal property or real estate without filing an account and without liability to any claimant against decedent who has not given notice of his claim within one year after the first complete advertisement of the grant of letters.

An accounting is basically an equitable remedy and is much more complex and expensive than a suit at law for debt. The court of common pleas* has concurrent jurisdiction with the orphans' court in proof of creditors' claims against the estates of decedents and a judgment obtained in the court of common pleas is conclusive in the orphans' court: Commonwealth, to use, v. Easton Trust Co., 347 Pa. 162 (1943) ; Schauble Estate, 350 Pa. 151 (1944). In many cases, therefore, in which a small claim of a single creditor is involved, such as in the present case, the ends of justice are better served if the validity of the claim is first determined in the county court before an effort is made to invoke the more costly remedy of accounting. For this reason, it has been our uniform practice to refuse requests for accounting, where the claimant has instituted proceedings in another tribunal to adjudicate his

---

* In Philadelphia County the county court, formerly known as the municipal court, has concurrent jurisdiction with the courts of common pleas in civil actions at law and in equity where the value of the matter or thing in controversy, exclusive of interest and costs, does not exceed the sum of $5,000.

claim, until the matter is concluded in the forum first selected by the claimant. See Greenwald's Estate, 25 Dist. R. 684 (1916) ; Ingber Estate, 19 Dist. R. 223 (1910) ; Singerly's Estate, 9 Dist. R. 261 (1900) ; Marschall's Estate, 6 Dist. R. 386 (1897). See also Sheehan Estate, 78 D. & C. 385 (1952).

An examination of the record before us discloses that the hospital's claim, as presented, is obviously incorrect and that its bookkeeping system is not reliable. The present claim is for $396.36, with interest from September 16, 1958. In its answer to new matter in respondent's answer, petitioner alleges:

"12 . . . thus leaving the following balances due:

"Hospitalization  4/ 9/57 to  4/25/57  $308.62
                   8/19/57 to  9/19/57    7.50
              10/ 4/57 to 10/25/57   80.24

                                      $396.36"

It seems evident that the payment of $316.12 made by the executor on October 3, 1958, was in payment of the first two items which total this precise sum, yet the claimant appears to be demanding payment for these items again. Furthermore, there is nothing in this record to indicate why interest should be paid from September 16, 1958, a date which appears to have been picked out of thin air.

But beyond all this, there is considerable doubt whether it is not the executor, personally, rather than the estate of decedent, who is responsible for the payment of this claim for decedent's hospitalization. Two of the three statements attached to the petition seem to indicate that the son, Paul Malvestuto, and not his mother, Laura, the patient, should be billed for her hospitalization, and, in his answer, the son has unequivocally stated that there is no need for filing an account in this matter because he will personally pay

the claim if the municipal court finds that a balance is due as alleged by petitioner.

We are, therefore, of the opinion, under the unusual circumstances of this case, that petitioner's request for an accounting must be refused at this time.

Albert Einstein Medical Center, the claimant, is one of the State's great hospitals and its board of trustees is composed of outstanding, honorable citizens of our community. We cannot believe that they are familiar with the drastic and harsh measures employed in the collection of this bill, as well as others which have been presented in our court.

The petition is, therefore, dismissed without prejudice to the right of claimant to file an amended petition upon the termination of the litigation in the county court, if the circumstances warrant, in which petition it will be required to set forth in full all of the facts and circumstances upon which it relies.