## ESTATE OF JOHN WENGERD, DECEASED.

APPEAL BY JANE E. WENGERD FROM THE ORPHANS' COURT OF CUMBERLAND COUNTY.

Argued April 27, 1891—Decided October 5, 1891.

[To be reported.]

1. In considering the question whether a legacy is vested or contingent, regard must always be had to the position of the parties; and the inclination of the courts to treat legacies as vested, is much stronger where a testator is providing for a child or grandchild, than where the gift is to a stranger or a collateral relative.

2. The doctrine of this state, from the time of Corbin v. Wilson, 2 Ash. 178, has uniformly been that a bequest of personal property relates to the time of the testator's death, unless a contrary intent is clearly indicated in the will; without such indication, the court is unwilling to construe a bequest over, in the event of a legatee's death before receiving payment, as referring to actual receipt.

3. When a bequest to grandchildren is coupled with a provision that if any of them should die "before the payment to them of their said share," it shall be divided among the survivors, it cannot be assumed that the testator intended to lodge in the executors the power, by delaying distribution, to defeat the rights of a legatee who, surviving the testator, might die before actual payment.

4. Such a bequest of a residuary share was given by a testator whose estate might well have been distributed very soon after his death. One of the legatees died nearly eleven months after the testator, having received $200 on account: the legacy vested at the death of the testator,

Statement of Facts.

and was not divested by the death of the legatee before full distribution: Haverstick's App., 103 Pa. 394, distinguished.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 119 January Term 1891, Sup. Ct.; court below, No. 407 June Term 1890, O. C.

To the number and term stated of the court below, Jacob Koser and John I. Gettle, executors of the will of John Wengerd, deceased, in obedience to a citation settled their account, exhibiting a balance in their hands for distribution. The account was referred to *Mr. R. M. Parker*, as auditor, for the purpose, inter alia, of reporting a schedule of distribution. The auditor found in substance the following facts:

John Wengerd, the testator, died on March 2, 1888. By his will, admitted to probate on March 9, 1888, after bequeathing to Marian Beaver a legacy of $150, he provided as follows:

"I direct my executors hereafter named to sell at public or private sale my house and lot on the east side of Penn street, known as the pastorage; and for the purpose of enabling them to do so, I hereby authorize them to make, execute, acknowledge and deliver the necessary deed or deeds to grant and convey the same to the purchaser or purchasers thereof; and the proceeds of the said sale, together with the proceeds of all bonds, notes, and cash on hand, with the proceeds of my personal property, I direct my said executors, after paying the legacy heretofore mentioned, my just debts and funeral expenses and the expenses of administration, to divide into three equal shares, which I hereby bequeath as follows: To Mary Gettle one third, to Elizabeth Koser one third, and to John Wengerd, Harry Wengerd and Catharine Wengerd, children of my son David Wengerd, deceased, the remaining one third, to be divided between them share and share alike; and in case of the death of any of said children of my son David, before the payment of their said shares, then to be divided between the survivors."

The testator had no debts at the date of his death. With the exception of the house and lot mentioned in the will, his estate consisted of personal property, a considerable part of it

Opinion of Court below.

being in corporate stocks. The house and lot were sold by the executors on September 20, 1888, for $860, ten per cent of the purchase money being paid on the day of sale, and the remainder being payable on April 1, 1889. The balance, ascertained by the auditor to be in the hands of the accountants for distribution, was $10,512.30.

John Wengerd, Jr., one of the legatees named in the will, died on January 21, 1889, leaving a widow but no issue. By his will, duly admitted to probate, he bequeathed his entire estate to his widow, Jane E. Wengerd, and appointing her his executrix. Before his death, he had received the sum of $200 on account of his distributive share under the will of John Wengerd, Sr., and that amount appeared to have been about a proportionate share of the money in hand available for the payment of legacies at that time. The remainder of the legacy bequeathed to him was unpaid at his death. Subsequently, by consent of all parties interested, there was paid to his widow $100, for the purpose of defraying her husband's funeral expenses, such payment not to be to the prejudice of any of the interests involved. The widow of John Wengerd, Jr., claimed the unpaid balance of the legacy, in his favor, as his executrix and sole legatee; while his surviving brother and sister, Harry and Catharine Wengerd, claimed it under the will of John Wengerd, Sr., asserting that it vested subject to be divested upon the contingency of the death of the legatee before payment.

Upon these facts, the auditor reported as his conclusion that the plainly-expressed intention of the testator was to make a gift over to the survivors, in the event of the death of one of the legatees before receiving payment of the legacy, and that the intention so expressed must govern: citing Baker's App., 115 Pa. 590. He therefore awarded to Harry and Catharine, in equal shares, the whole of the unpaid portion of the legacy in favor of the children of David Wengerd.

Exceptions having been filed to the report of the auditor, the court, SADLER, P. J., after argument, filed an opinion and decree as follows:

The conclusion arrived at by the auditor seems to be fully supported by Haverstick's App., 103 Pa. 394. I believe that

Arguments.

the distribution made is also in accordance with the intention of the testator. In Muller's Est., 19 W. N. 320, the direction in the will was to pay the legacy "immediately" after the decease of the testator. In the will of Wengerd, the provision is that "in case of the death of any of said children of my son David, before the payment to them of their said share, then to be divided between the survivors." It was not immediately payable on the death of the testator. In Haverstick's Appeal, supra, it was provided that should any of them die before the distribution of the estate without heirs, then the part allotted to such shall be divided equally among the others named. So that the present case and that of Haverstick's Appeal may be distinguished from that of Muller's Estate. Again ; the latter decision is by the Orphans' Court of Philadelphia, and not therefore controlling.

And now, October 17, 1890, the exceptions filed to the report of the auditor are dismissed, and the said report is confirmed, and Jacob Koser and John I. Gettle, the accountants and executors of John Wengerd, are hereby ordered and directed to pay out the balance in their hands in accordance with the scheme of distribution prepared by the auditor.

—Thereupon Jane E. Wengerd took this appeal, specifying that the court erred:

1. "In holding that the legacy bequeathed by John Wengerd, Sr., to his grandson, John Wengerd, Jr., did not vest in him at the death of the testator, and pass to the appellant, under her husband's will.

2. "In holding that while nine tenths of the estate consisted of cash and of first-class stocks, immediately convertible into cash at any time, or distributable by division and transfer to the legatees, and of good notes, all due and most of them actually collected before John Wengerd, Jr's., death, the share bequeathed to said John Wengerd, Jr., at least to the extent of said nine tenths, did not become immediately payable to and vested in him."

*Mr. F. E. Beltzhoover* (with him *Mr. J. E. Barnitz*), for the appellant:

In the distribution of his estate, the testator plainly intended the most exact equality among all his children. The provision

for the contingency of the death of any of the children of his son David, was intended to guard against the possibility that by such death, in the testator's lifetime, the share of the one so dying might fall back into his estate, and thus produce the inequality he wished to avoid. It is against the spirit and purpose of the will that by procrastination in the settlement of the estate, his grandson's share should be cut off: King v. Frick, 135 Pa. 575; Mickley's App., 92 Pa. 514; Green's Est., 140 Pa. 253; Little's App., 117 Pa. 14; Muller's Est., 19 W. N. 320; Corbin v. Wilson, 2 Ash. 178; Coggins' App., 124 Pa. 10; 3 Jarman on Wills, 672; Rammell v. Gillow, 15 L. J. Ch. 35; Hutchin v. Mannington, 1 Ves. Jr. 366; Martin v. Martin, L. R. 2 Eq. 403; Minors v. Battison, 1 App. Cas. 428; Girdlestone v. Creed, 10 Hare 487. At least, the sum which by reasonable diligence could have been paid to the legatee in his lifetime, should be awarded to his executrix: Law v. Thompson, 4 Russ. 92

*Mr. J. W. Wetzel*, for the appellees:

1. It is plain that the testator intended that if before payment over to the children of his deceased son David, any of said children should die, then the whole of the one third share bequeathed to David's children should go to the survivor; his purpose being to keep his estate among his own descendants. The bequest is plainly a vested one, capable of being divested by the death of the legatee prior to payment, and such a contingency may lawfully be attached to a legacy: Haverstick's App., 103 Pa. 394. If the testator had intended the appellant to share in the estate, in the event of her husband's death, he would have said so.

2. The facts alleged in the second assignment of error were not found by the auditor and court, and they were not asked to find them. Nor are they all true. There is no justification for the point made in the assignment. The executors had a year to settle the estate in, and they were progressing as rapidly as possible. Were they bound to anticipate that John Wengerd, Jr., was to die within the year, and hasten to pay over to him his share of the estate before the purchase money of the realty was due and collectible, in the face of the provision in the will that the division into three shares should be made after sale of the real estate, payment of debts, and ascertainment of expenses of administration?

OPINION, MR. CHIEF JUSTICE PAXSON:

The contention in this case arises over the following clause in the will of John Wengerd, deceased:

"I direct my executors, hereinafter named, to sell, at public or private sale, my house and lot on the east side of Penn street, known as the pastorage; and for the purpose of enabling them to do so I hereby authorize them to make, execute, acknowledge and deliver the necessary deed or deeds to grant and convey the same to the purchaser or purchasers thereof; and the proceeds of the said sale, together with the proceeds of all bonds, notes, and cash on hand, with the proceeds of my personal property, I direct my said executors, after paying the legacy heretofore mentioned, my just debts and funeral expenses, and the expenses of administration, to divide into three equal shares, which I hereby bequeath as follows, viz.: To Mary Gettle one third; to Elizabeth Koser one third; and to John Wengerd, Harry Wengerd, and Catharine Wengerd, children of my son David Wengerd, deceased, the remaining one third to be equally divided between them, share and share alike; and in case of the death of any of the children of my son David, before the payment to them of their said share, then to be divided between the survivors."

John Wengerd, one of the grandsons above named of the testator, died about eleven months after the death of the latter. He had received two hundred dollars of his share before his death. He left a will in which he made his widow, Jane E. Wengerd, the appellant, his sole legatee and executrix. She now claims, under her husband's will, the balance due him under the will of his grandfather. The court below rejected her claim; hence this appeal.

The question is, when did the legacy to John Wengerd vest, if it vested at all? And, if it vested at the death of the testator, was it divested by the accident of John's death before the full and final distribution of his grandfather's estate? That the executors regarded his interest as vested is clear from the fact that they paid him two hundred dollars on account of it; and it is equally clear, had the distribution been made, as it might well have been, prior to John's death, he would have been entitled to the share. The testator had no debts. With the exception of a house and lot, his estate not otherwise dis-

posed of consisted of cash securities and money which could readily have been distributed almost immediately after his death. The account was not filed until two years after the testator died, and then in obedience to a citation. We do not think the executors can defeat the rights of a legatee by delaying distribution.

In considering the nice question whether a legacy is vested or contingent, regard must always be had to the position of the parties. In construing a will, where the bequest is ambiguous, the inclinations of the courts are always towards vesting the legacies: Coggins' App., 124 Pa. 10. The presumption that a legacy was intended to be vested, applies with far greater force, where a testator is making provision for a child or a grandchild, than where the gift is to a stranger or to a collateral relative, as in Haverstick's App., 103 Pa. 394. It would be straining a point to hold that this testator intended that his grandchild should be deprived of his share, though he should die leaving a child or children, by the mere accident of his death the day before the money was distributed. This would enable an executor, under some circumstances, absolutely to defeat the will of his testator, by withholding or refusing distribution for a certain period. We cannot assume that this testator intended to lodge such a power in the hands of the executor of his will.

The doctrine of this state, from the time of Corbin v. Wilson, 2 Ash. 178, has uniformly been that a bequest of personal property relates to the time of the testator's death, unless a contrary intent is clearly indicated in the will. "If any immediate legacy is given without specifying a time for payment, and is given over in case the legatee dies before it becomes payable, the word, payable, can only have reference to the death of the testator:" Jarman on Wills, 809; and the same learned author says, in volume 3 of the same work, page 612: "Executory gifts over, in the event of legatees dying before receiving their legacies, have given rise to much litigation. Actual receipt may be delayed by so many different causes that the court is unwilling to impute to the testator an intention to make that a condition of the legacy, and thus indefinitely postpone the absolute vesting of it." In Rammell v. Gillow, 15 Law J. Ch. 35, where the will directed that the fund should go in equal shares to testator's children when they should attain twenty-one

years of age, but, in the event of the decease of any of said children before they should have received or become possessors of their share, said share was to go to their children, it was held that those who had attained the age of twenty-one took vested interests, even though they died before receiving the money. In Hutchin v. Mannington, 1 Ves. Jr. 366, there was a gift over, if the legatee should die before he may have received it; and Lord THURLOW said: " I am to compute what time would be sufficient to enable these parties to receive their legacies. It is all too uncertain. Suppose we have given real estate in the manner you specify. It is clear that it will neither depend on the caprice of the trustee to sell, for that would be contrary to all common sense, nor upon his dilatoriness. In some way it may be sold immediately; but I should not inquire when a real estate might have been sold with all possible diligence, for it might be the very next day, or that very evening, and therefore the court always, in such a case, considers it as sold the moment the testator is dead; for, where there is a trust, that is always considered here as done which is ordered to be done, and the court cannot measure the time. In this case it is an immeasurable purpose; I can do nothing with it, and it must be considered as vested from the death of the testator." Martin v. Martin, L. R. 2 Eq. 404; Minors v. Battison, L. R. 1 App. Cas. 428; and many other English cases hold the same doctrine.

The only case cited in opposition to this line of authority is Haverstick's Appeal, supra, which, while it gives color to the appellee's contention, differs in some respects from the case in hand. There, the appellant claimed as the heir of his deceased wife. The clause in the will was, "Should any of them die before the distribution of my estate, without heirs, then the part allotted to such shall be divided equally among the others named." The court held that the word " heirs " meant " children," and that the appellant was not entitled as heir to the legacy. The whole contention was over this point.

> The decree is reversed at the costs of the appellee; and it is ordered that the record be remitted, with instructions to make distribution in accordance with this opinion.