## Wraught's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*S. Lloyd Moore* of *Moore, Gossling & Panfil*, for exceptant.

*Victor R. Bieber*, contra.

KLEIN, J., December 24, 1942.—Testator, after making an absolute unconditional gift of his estate to his

wife, provided in a subsequent paragraph that if she should predecease him or if they should die under such circumstances as to make it impossible or impracticable to determine who died first, or should his wife die before the settlement of his estate, then in such event his estate should pass to another person not related to him.

The provisions concerning the possible death of the testator and his wife in a common accident may be dismissed from our consideration, because the wife, in fact, survived her husband for a period of six months. The principal question raised by these exceptions involves the construction of the phrase "die before the settlement of my estate."

The learned auditing judge in a well-reasoned and carefully-considered adjudication ruled that this case is controlled by Wilkes' Estate, 25 D. & C. 228 (1935), unanimously decided by this court in a per curiam opinion, and held that the residuary estate vested in the widow and that the divesting contingency was inoperative. A majority of the court agree with this conclusion.

It is settled beyond question "that where in a will an absolute estate is given it will not be cut down by subsequent language unless the intent so to do is clear": Garrett's Estate, 321 Pa. 74, 77 (1936). The courts have consistently held that such expressions as "survive long enough to come into actual possession" and "die before distribution of my estate" are too vague and indefinite to divest an otherwise absolute estate: Wengerd's Estate, 143 Pa. 615, 621 (1891); Martin's Estate, 57 Montg. 352 (1941); Bittner's Estate, 18 Lehigh 191 (1939); Dilworth's Estate, 58 Pitts. 47 (1910); Blecher's Estate, 22 Lanc. 17 (1901); Wirt's Estate, 12 York 23 (1898); Muller's Estate, 19 W. N. C. 320 (1887). In our opinion the meaning of "settlement of my estate" is equally doubtful and equivocal and it cannot be construed to divest the widow

of the unconditional gift given in the preceding paragraph of the will.

Counsel for exceptant contends that testator contemplated an audit of the executrix's account by the orphans' court and that her death prior to formal action by the court divested her of the gift in favor of the alternate legatee. We cannot agree with this contention.

Approximately "40% of the estates in Philadelphia are wound up without formal accounts": I Remick's Pennsylvania Orphans' Court Practice (3rd ed.), p. 402, n. 6, cited with approval in Ray's Estate, 345 Pa. 210, 213 (1942). Surely, these estates must be regarded as settled when all creditors are paid and distribution made to the parties entitled thereto, even though they are never brought before the orphans' court for audit.

The Supreme Court points out, further, in Ray's Estate, supra, that even where accounts have been filed the practice in settling estates of decedents differs in the various counties of the State. If this court were to adopt the strict definition of "settlement" urged upon it by exceptant, the construction of the language under consideration would vary, depending upon the probate practice existing in each county.

Let us suppose that the executrix had filed an account. At what stage of the proceedings would "settlement of the estate" have taken place? If an adjudication had been entered by the court confirming the account and awarding the balance for distribution to her, but distribution had not yet actually been made, would the estate have been considered settled? What would have been the result if distribution had been made but satisfactions of awards had not been filed and the executrix had not been formally discharged? Even more forcibly, we might inquire: What would have been the effect of prolonged but unsuccessful litigation instituted by the alternate legatee or by some-

one in her behalf? Could a disappointed legatee or a scheming claimant divest the widow of her interest in the estate by unduly delaying its settlement? We think not. So many contingencies might thus delay the administration and distribution of the estate that we cannot impute to this testator in his use of the word "settlement" an intention to impose upon his wife, as a condition to receiving his bounty, a strict compliance with all the formalities of our practice. See Martin's Estate, supra.

But even if, for the sake of argument, we concede that the gift to the wife was contingent, it is clear that she had progressed to a point in her administration of the estate where liability for taxes had been acquitted and the claims of all creditors had been satisfied. Therefore, no one but she had any further interest in the estate either as surety, creditor, or legatee, and she may be regarded as having settled the estate within testator's meaning. The actual transfer of the assets from the widow as executrix to herself individually, whether by authority of the orphans' court or not, is purely ministerial and not, in our opinion, an essential prerequisite of "settlement".

We agree with the auditing judge that McClure's Estate, 221 Pa. 556 (1908), relied upon by exceptant, is not applicable to the present case. For an interesting discussion, distinguishing McClure's Estate from a situation similar to the one before us, see Bittner's Estate, supra, p. 193, opinion by Gearhart, P. J.

We are fortified in our conclusion in this case by the well-established rule of law that an interest will not be considered to be contingent unless it is impossible to construe it as vested: Youngblood's Estate, 117 Pa. Superior Ct. 550, 554 (1935). And this preference for vested estates applies with much greater force where, as in this case, the testator is making provision for his wife, who is the natural object of his bounty, and the alternate legatee is a stranger.

· Having reached the conclusion that the interest of the widow was vested, it is not necessary to consider the other exceptions filed by the alternate legatee, as under the view we have taken she has no further interest in this estate.

The exceptions are therefore all dismissed and the adjudication confirmed absolutely.

STEARNE, J., dissenting.—I am unable to join with the majority. The intention of the testator is the polar star in the construction of wills: Sarver's Estate, 324 Pa. 349. Such intent is to be gathered from the *whole* will: Williamson's Estate, 302 Pa. 462. Canons of construction cannot defeat clear and unequivocal expressions of intention: Line's Estate, 221 Pa. 374; Groninger's Estate, 268 Pa. 184; and Weir's Estate, 307 Pa. 461.

In my view, reading the will from its four corners, testator *did* intend that the death of the wife before actual distribution *should* divest her of the estate. This clear expression of intention overcomes any canon of construction to the contrary. *The contest over testator's estate is not between testator's widow and his alternate beneficiary, but is between the widow's testamentary legatee and the testator's alternative legatee.*

What testator clearly contemplated was the possibility of simultaneous deaths of himself and wife, or of his wife's death either before or after his own. See Kimmey's Estate, 326 Pa. 33. This is a consideration of testators which is increasingly apparent in wills, and is undoubtedly due to the hazards and speed of modern transportation in the air, on land, and at sea.

The first item of the will bequeaths the residuary estate to the wife absolutely. In the immediate succeeding item testator provides specifically for three divesting contingencies: (1) Prior death of the wife; (2) their simultaneous deaths "or under such circumstances as to make it impossible or impractical to de-

termine who died first" (Kimmey's Estate, supra), or (3) should the wife die *"before the settlement of [his] estate."* It was the last divesting contingency which actually occurred. The widow (who was named executrix) survived the testator by six months; she employed an attorney and commenced her administration of the estate; she died before she had completed her duties and before she could have done so under the statutes and rules of court. There was no actual distribution of the assets, and all the securities of the estate remained in the name of the testator and in the joint safe deposit box where they had always been kept during testator's lifetime. There is not the slightest indication that there was ever an *informal settlement and distribution* of the estate. The record discloses, on the contrary, that the ordinary procedure of the settlement of the estate was normally following its usual course, under the direction of the estate's attorney, when it was interrupted by the death of the executrix.

The legal question thus presented is whether the testator intended that the accident of death before actual distribution should divest the gift to the wife. In the facts of this case, I am of the opinion that this is exactly what the testator *did* intend. Regarding the will as a whole, testator clearly discloses that, unless his wife came into actual possession and enjoyment of his estate, he desired it to pass to *his* alternative beneficiary. In my view, every *presumption* to the contrary is clearly and unequivocally rebutted. I would pass the *testator's* own estate to *testator's* named beneficiary, rather than to the beneficiary under the *wife's* will.

The auditing judge, in his readjudication, ruled that, as the residuary estate had been first bequeathed absolutely to the wife, the divesting contingency in the subsequent item of the will (should the wife die "before the settlement of my estate") was not sufficiently

definite to divest the vested estate in the wife. The majority adhere to this view, but I disagree.

Primarily, the action of the majority rests upon the decision of the Supreme Court in Wengerd's Estate, 143 Pa. 615; of this court in Wilkes' Estate, 25 D. & C. 228; and of other cited county court decisions, the latest of which is Martin's Estate, 57 Montg. 352. As an additional weight, the majority relies upon the well-established canon of construction that where an absolute estate is bequeathed it will not be cut down except by clear and unequivocal language, citing Garrett's Estate, 321 Pa. 74. To my mind, this latter principle has doubtful application to the present facts. It must be conceded, in view of the decisions, that the problem presented is not free from difficulty. In my opinion, the confusion arises in endeavoring to follow the legal reasoning in the Wengerd case, supra, and in attempting to reconcile the much later case of McClure's Estate, 221 Pa. 556. The basic reasoning in the Wengerd case is that the possible accident of time in actual distribution of an estate, and the opportunity for fraud, either in accelerating or retarding distribution, makes the term "settlement of an estate" so indefinite and uncertain that a prior vesting will not be disturbed. The principle relied upon in support of such reasoning is that there exists a *presumption* that the legacy was *intended* to be vested, and it is therefore not lost to the legatee's estate merely because of the legatee's death before actual payment and distribution.

The gist of the Wengerd decision may be found on page 621 of the report, where Chief Justice Paxson wrote:

"In considering the nice question whether a legacy is vested or contingent, regard must always be had to the position of the parties. In construing a will, where the bequest is ambiguous, the inclinations of the courts are always towards vesting the legacies: Coggins'

App., 124 Pa. 10. The presumption that a legacy was intended to be vested, applies with far greater force, where a testator is making provision for a child or a grandchild, than where the gift is to a stranger or to a collateral relative, as in Haverstick's App., 103 Pa. 394. It would be straining a point to hold that this testator intended that his grandchild should be deprived of his share, though he should die leaving a child or children, by the mere accident of his death the day before the money was distributed. This would enable an executor, under some circumstances, absolutely to defeat the will of his testator, by withholding or refusing distribution for a certain period. We cannot assume that this testator intended to lodge such a power in the hands of the executor of his will."

In the Wengerd case the bequest was to grandchildren, coupled with a provision that if any of them should die "before the payment to them of their said share." The estate of a grandchild so dying was held not to be precluded from receiving such share. As pointed out by the late distinguished John G. Johnson, Esq., in his brief in the McClure case, supra, where a bequest is immediate, and only payment is postponed, the legacy is vested. In the present facts, unlike those in the Wengerd case, any presumption against the operation of a divesting contingency is rebutted and overcome where it is so clearly manifest that testator intended (among other contingencies) to pass the estate to his alternative beneficiary if the wife *should* happen to die before coming into actual possession of his estate.

The expression "settlement of my estate" does not appear to me as an indefinite or uncertain term. Throughout the cases and text books "settlement of an estate" has a most definite and well-understood meaning. It is the administration of the estate by payment of taxes, debts, and the making of distribution. I do not share the apprehension of the majority

that the *opportunity* for exercising fraud renders the term indefinite. The orphans' court has full jurisdiction to deal with such a situation if it should ever arise. Within its sphere, the orphans' court is a court of equity and it applies equitable principles: II Hunter's Pennsylvania Orphans' Court Commonplace Book 946. One of equity's maxims most often applied is "Equity looks upon that as done which ought to be done": Bispham's Principles of Equity (10th ed.) 75. Irrespective of what a fiduciary may do, or fail to do, the orphans' court, under proper circumstances, and in equity, can regard an estate as settled depending upon the facts.

Another factual situation remains to be considered. It is true, of course, that under our law an estate can be settled without resort to the orphans' court. Indeed, family settlements have always been favored by the law: I Remick's Orphans' Court Practice 2. Had the wife in this case, as sole beneficiary, evidenced an intention to so dispense with legal formalities, which she might have done by paying all taxes, debts, and charges, and retaining the balance as her own without an accounting, it might well have been argued, and with much force, that the estate had in fact been "settled" within the contemplation of the testator. In other words, under such circumstances, it might be said in truth and in fact that the wife had reduced the estate to actual possession. But, by the wildest stretch of the imagination, no such factual situation exists here. According to the record, statements of counsel, which were manifestly regarded as a stipulation by the auditing judge, reveal that this ill and elderly woman had left the details of settlement to her attorney, who, as above recited, was proceeding with the administration of the estate when his client died. This the auditing judge properly found as a fact in both adjudications.

The facts in the McClure case, supra, are very close to those in the present case. There the divesting contingency clause was: "in case [her] nephew should die . . . before my estate is fully settled up by my executor and before the proceeds of my estate shall have been paid over to my nephew . . ." The nephew died, and it was held that no estate had vested in him. The able Judge Gearhart, in Bittner's Estate, 18 Lehigh 191, distinguishes this case from Wengerd's Estate, supra, upon the ground that the accountant in the McClure case was given five years within which to settle the estate, and hence *there was a fixing of the period of distribution with reasonable certainty.* I feel that the decision in the Bittner case was correct, but upon a different theory, for therein the beneficiaries used and enjoyed the estate for about five years after the date of death, thereby indicating there had been a family settlement.

To summarize: If testator *intended* to vest his estate in his wife, but to defer payment until the estate was settled, then the wife's bequest was not divested because of her death before settlement. In such case the majority is clearly correct. If, however, as I view the case, it was testator's intention to divest the bequest to the wife in the event that she did not come into actual possession upon the settlement of the estate, then, upon her death before such settlement of the estate, I would send *testator's estate,* as he clearly and unequivocally directed, to his alternative beneficiary, not to the *wife's* testamentary beneficiary.

I shall not attempt to distinguish all the county court cases cited by the majority. Indeed, I could not. In many of the cited cases there was a vesting, and merely a time fixed for payment—a very different situation than exists here. The writer of this opinion must share full responsibility for the per curiam opinion of this court in Wilkes' Estate, 25 D. & C. 228.

However, if I joined in an improper result there, I see no reason to perpetuate what I now regard as error.

I would sustain the exceptions in this case.

BOLGER, J., concurring.—The dissenting opinion disavows the application in the majority opinion of the well-known and often-applied principle of law that a fee once given will not be cut down by subsequent language "unless the intent to do so is clear". In my opinion not only is the maxim applicable but the case eminently illustrates its wisdom. Testator's "subsequent" language is not clear; it does not expressly or impliedly refer to the contingency which has occurred. we are faced, therefore, not only with the doubt as to the vesting or contingency of the fee as pointed out in both opinions, but also with the inconceivable proposition that this testator intended to be entirely callous to the welfare of his wife during the indefinite period of the administration of his estate as defined in the minority opinion. There is no provision, short of complete disherison of her interest should she not survive that period—no provision for her maintenance, or for possible emergency requiring expenditures of large or small sums of money. It is incomprehensible that he meant she should be destitute for even one day, not to speak of months or possibly longer. Could he have intended that should she, prior to her death, transfer a large portion of the registered investments to her name and sell others to provide funds to prevent her from becoming a public charge, and now her estate should disgorge the transferred securities and reimburse testator's estate for all sums of money spent for her support? All for what purpose? For the benefit of the substitutionary legatee! I am sure that had this testator realized the import of this attempt to "cut down the fee" he would not have tolerated this experimental play with future events or with phrases attempting to describe them. The majority opinion

therefore has not merely abstractly applied an artificial rule of construction but is fulfilling the real intent of testator.

An important element in this class of case has not been considered. That is the real estate, which is just as much a part of the estate as is the personalty, although title to it is derived in a different manner from that of the personalty. When and how did testator intend the real estate should be "settled"? Did he have a dual intent, that settlement of real estate was to be distinct from that of his personal property? That the condition of "settlement" did not apply to the realty, and therefore the fee in his widow became absolute immediately upon his death and only the personalty should be subject to the substitutionary provision? Or did he mean that, in the contingency, all of his property—both classes—should go to the alternative beneficiary? The burden of satisfactorily answering such questions rests upon exceptant and in my opinion has not been successfully met. Such failure adds to the confusion and uncertainty involved in construing the disputed "cutting down" provision.

For these reasons as well as those contained in the majority opinion I concur in the conclusion reached in that opinion.

---

NOTE.—The foregoing decree was reversed by the Supreme Court on May 10, 1943: Wraught Estate, 347 Pa. 165.