Wraught Estate.

Argued April 19, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON and PARKER, JJ.

reargument refused May 26, 1943.

S. Lloyd Moore, of Moore, Gossling & Panfil, with him David B. James, Jr., for appellant.

Victor R. Bieber, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 10, 1943:

Testator, Albert B. Wraught, died on April 18, 1940. In his will, after directing the payment of his debts and funeral expenses, he bequeathed his residuary estate to his wife, Alice M. Wraught, "absolutely and in fee simple." But there followed this provision: "Should my said wife, Alice M. Wraught, predecease me, or should we both die together, or under such circumstances as to make it impossible or impracticable to determine who died first, or should my said wife, Alice M. Wraught, die *before the settlement of my estate,* then and in such event, but in such event only, I give, devise and bequeath my said entire residuary estate unto Alfaretta M. Hale, of Brooklyn, New York, absolutely and in fee simple." He appointed his wife executrix, but, in the event of her death "before me, or together with me as aforesaid, or before the *settlement of my estate,* then and in such event, I do hereby nominate, constitute and appoint the said Alfaretta M. Hale, as sole executrix of this my last will and testament, . . ."

Letters testamentary on Wraught's estate were granted to his widow on May 13, 1940. She died on October 17, 1940, and on December 14, 1940, supplemental letters were granted to Alfaretta M. Hale as succeeding executrix. An account was filed by Mrs. Wraught's executor on her behalf as executrix. The auditing judge found as a fact that settlement of the estate had not been

completed before Mrs. Wraught's death, but the court held that the contingency on which the residuary estate was to go to Alfaretta M. Hale was "inoperative." Alfaretta M. Hale appeals.

Where a testator in the first instance uses language which amounts to the granting of a fee simple estate, but by subsequent words indicates his intent to give a less estate, or to make the grant conditional, there is no rule which prevents the giving of effect to such intent: *Davenport* v. *Graham,* 343 Pa. 497, 23 A. 2d 482; *Hanna's Estate,* 344 Pa. 548, 26 A. 2d 311; *Ramsey's Estate,* 346 Pa. 157, 159, 29 A. 2d 493, 494. Here an absolute estate in the residue was given to the widow, but there followed the provision that, on the happening of a certain event, an alternative beneficiary, Alfaretta M. Hale, was to become the residuary legatee. The court below thought that the contingency specified, namely, the death of the wife "before the settlement of my estate," was too "vague and indefinite" to be given legal recognition. It is true that the term "settlement of my estate" is broad enough to have several possible connotations, but, as in the case of *all* language used in testamentary instruments, the function of judicial interpretation is to ascertain the import of words *as actually employed by the testator: Hogg's Estate,* 329 Pa. 163, 166, 196 A. 503, 505. Ordinarily the "settlement of an estate" means payment of the taxes and debts and making distribution among those entitled. What the present testator had in mind would seem quite clear. He was contemplating the possible death of his wife before or at the time of his own death, or within such a short period thereafter that she would not be able to acquire actual possession of his property. He wanted her to be the one to enjoy his estate if she lived long enough for that purpose, but, if not, he wanted it to go to Alfaretta M. Hale rather than to the heirs of his wife or to persons who might be named in her will. This interpretation is strengthened by the fact that he appointed Alfaretta M. Hale in place of his wife as executrix if— using the same expression—the latter should die "before

the settlement of my estate": the words in that connection can mean only the death of his wife before her work as executrix was completed, and that would not be until the estate was distributed. It must be assumed that he intended this same meaning when he used the identical words in connection with the gift of his residuary estate.

In *McClure's Estate*, 221 Pa. 556, 70 A. 860, a testatrix devised her estate to her nephew, but provided that if he should die "before my estate is fully settled up by my executor hereinafter named and before the proceeds of my said estate shall have been paid over to my nephew Humes Hall, as herein provided," the estate should go to her cousins. The nephew died soon after the death of the testatrix and before her estate was settled. It was held that the cousins were entitled to the estate. On the other hand, in *Wengerd's Estate*, 143 Pa. 615, 22 A. 869, upon which appellee largely relies, where the share of the legatee was to be diverted to others if he died before receiving payment, it was held that even though he did so die the legacy had vested in him at the death of the testator. There, however, the payment to the legatee could have been made almost immediately after the death of the testator and long before his own, but the executors did not file their account for two years and then only in obedience to a citation; it was naturally held that they could not thus arbitrarily deprive the beneficiary of his legacy. So it is argued here that an executor might deliberately delay settlement in order to change the course of a legacy thus conditioned, but, as in *Wengerd's Estate*, any such attempt would certainly not be allowed by a court to defeat a legatee's rights. In the present case the argument is academic, for the widow was herself the executrix and she had both the incentive and the power to hasten the process of settlement.

That the estate was not in fact settled at the time of Mrs. Wraught's death is not open to question, and the auditing judge so found. There were not only contested items in the account filed by her executor but also dis-

puted claims; furthermore, the estate consisted wholly of stock certificates registered in the name of testator and none of these had been transferred to the widow, nor even, apparently, had any attempt been made to that end. It is also to be noted that Mrs. Wraught died slightly more than four months after the first insertion of the advertisement of the grant to her of letters testamentary and therefore, under the rules of the court, almost two months before she could have filed her account as executrix. It is idle to argue that she might have reduced the estate to possession without going through the formality of filing an account and having a schedule of distribution judicially approved; whether or not she could have done this, the fact is that she did not proceed in that manner, but pursued the ordinary method of settlement and never came into actual possession or enjoyment of the estate, which was the condition upon which she, instead of appellant, was to be the beneficiary under testator's will.

There is a dispute as to the widow's exemption. Section 21 (a) of the Fiduciaries Act of 1917, P. L. 447, provides that a widow may "retain or claim" either real or personal property or its proceeds to the value of $500. The widow here neither "claimed" an exemption nor "retained" any property; indeed, as there was no cash in the estate, but only stock certificates registered in testator's name, there was no property as to which she could have exercised the right of retention. All that she in fact did was to deduct the amount of the exemption in the affidavit filed by her for inheritance tax purposes; this was not a claim sufficient to meet the requirements of the act.

At the instance of appellant certain credit items were reduced or wholly stricken from the account by the auditing judge, as were also some items of receipt and distribution of income. The adjudication, however, was subsequently nullified and a re-adjudication substituted in which no ruling was made in regard to those items. The

surcharges imposed in the original adjudication should now be reinstated. The allowances in the re-adjudication of claims for expenditures made by counsel on behalf of the estate, commissions of the executrix and counsel fees were proper.

The decree is reversed, and the record is remanded for the entry of a decree in accordance with this opinion. Costs to be paid out of the estate.