## Miller Estate

*Melvin Dion*, for accountant.

*Barry N. Sklar*, for judgment lien creditor.

*Hugh P. Connolly*, for Commonwealth.

SHOYER, J., May 1, 1962.—Eva Miller died March 1, 1960, intestate, not survived by a spouse, leaving, as appears from the statement of proposed distribution, as the person entitled to her estate under the intestate laws, Samuel Miller, a son, who is the accountant.

Letters of administration were granted to the accountant on April 12, 1960, and proof of publication of the grant of same is hereto annexed.

The estate is hopelessly insolvent. The statement of proposed distribution lists the claim of Strawbridge and Clothier in the amount of $1,221.75, which it is admitted was reduced to judgment in the decedent's lifetime and is a lien on decedent's two parcels of real estate, funeral expenses in the sum of $774.20, medical and hospital expenses incident to the decedent's last illness incurred within six months of decedent's death, some general creditors, all of whose claims are admitted, and the claim for the $1,000 family exemption which the statement, in paragraph (g) thereof, erroneously avers has been allowed. The statement requests that the $314.55 cash balance shown in the restated account be awarded, $10 for payment of the administrator's bond and $304.55 on account of the exemption claim. (No credits appear in the account as prepayment on account of the exemption.)

The fact is that the petition for the allowance of the family exemption was not presented to the court until the audit of the account.

Although all parties in interest are stated to have had notice of the audit and of the accountant's request to distribute the balance on account of the exemption

claim, the judgment creditor was the only creditor who appeared at the audit. He vigorously protests allowance of the exemption claim, contending (1) that claimant was not a member of the same household as the decedent, and (2) that claimant has forfeited his rights to the exemption by his laches. The judgment creditor also objected to the form of the account and to certain credits therein, and continues these objections as to the restated account.

Decedent's *inventoried* estate consists of principal personalty in the sum of $417.14, and premises 2638 North Front Street at a value of $4,000 and premises 2449 North Front Street at a value of $3,000. In his account the accountant charges himself with principal personalty of $436.11 and with the proceeds of sale of both parcels of real estate, which were sold for the payment of decedent's debts under the provisions of section 543 of the Fiduciaries Act of April 19, 1949, P. L. 512, as amended, 20 PS §320.543. Premises 2449 North Front Street were sold at private sale for $3,800 pursuant to decree of Judge Bolger, dated July 13, 1960. Premises 2638 North Front Street were sold at public sale pursuant to accountant's petition and decree of Judge Saylor, dated September 12, 1960, and the public sale for $2,400 was confirmed by decree of Judge Saylor, dated December 9, 1960, pursuant to accountant's petition. The accountant also charges himself with receipt of rents from both properties in the aggregate sum of $723.

The accountant takes credit in principal personalty for payment of some administration expenses aggregating $232.85, leaving a balance of principal personalty of $203.26. As to premises 2449 North Front Street, credit is taken for three monthly mortgage payments of $37.65 each, repayment of the balances owing on two mortgages, taxes and administration expenses, leaving a balance of $658.99. As to premises 2638

North Front Street (sold for $2,400) credit is taken for payments aggregating $3,349.70, a *deficiency of $949.70*. Included in the $3,349.70 are credit for four monthly mortgage payments of $47 each, payment of $1,939.41 to satisfy the mortgage, delinquent and current real estate taxes and water rents, and administration expenses.

The judgment creditor objected, inter alia, to the credits in the rental account, demanding information as to whether these credits were debts of decedent or current operating expenses. The testimony of the accountant clearly establishes these credits as being in the latter category. The balance in the rental account is shown as $402. The combined net balance shown by the restated account is $314.55.

Section 622 of the Fiduciaries Act of 1949, 20 PS §320.622, entitled "Classification and Order of Payment", provides: "If the applicable assets of the estate are insufficient to pay all proper charges and claims in full, the personal representative, subject to any preference given by law to claims due the United States, shall pay them in the following order, without priority as between claims of the same class:

(1) The costs of administration;

(2) The family exemption;

(3) The costs of the decedent's funeral and burial, and the costs of medicines furnished to him within six months of his death, of medical or nursing services performed for him within that time, and of services performed for him by any of his employees within that time;

(4) The cost of a gravemarker;

(5) Rents . . .;

(6) All other claims, including claims by the Commonwealth."

Section 611 of the Fiduciaries Act, entitled "Liens and Charges Existing at Death not Impaired", pro-

vides: "Nothing in this article shall be construed as impairing any lien or charge on real or personal estate of the decedent which existed at his death."

Section 612 of that act, entitled "Judgments Which Are Liens at Death", provides in pertinent part: "Any judgment which at the decedent's death was a lien on real estate then owned by him . . . shall continue to bind the real estate for five years from the inception or last revival of the lien or for one year from the decedent's death, whichever shall be longer, although the judgment be not revived after his death. During this period, the judgment shall rank according to its priority at the time of death . . ."

It is clear that the lien creditor's rights in the fund realized from the judicial sales herein, both of which were held within a year of decedent's death, were not divested by the sales, but attached to the fund: Engle's Estate, 344 Pa. 535 (1942); Morrison's Estate, 343 Pa. 157, 159 (1941); Wohlsen's Estate, 262 Pa. 93 (1918).

However, the lien of the judgment is subordinate to the family exemption when properly claimed: Nottes' Appeal, 45 Pa. 361; Kauffman's Appeal, 112 Pa. 645; Graves' Estate, 134 Pa. 377; Henderson v. Briggle, 11 D. & C. 581; Rodkey's Estate, 84 Pitts. L. J. 116; Citizens Trust Company v. Funt, 24 D. & C. 190; Koss' Estate, 59 D. & C. 308. And the exemption is preferred over the tax lien: Appeal of the City of Allentown, 109 Pa. 75; see Davidson's Estate, 42 D. & C. 595.

The Lien Priority Law, Act of June 28, 1951, P. L. 927, sec. 2, 68 PS §602, provides that liens against real property shall have priority over each other on the following basis: (1) purchase money mortgages . . . (2) other mortgages and defeasible deeds . . . (3) verdicts for specific sum . . . (4) adverse judgments, orders and decrees from the time they are entered.

The mortgage, whether or not it is a purchase money mortgage, is an estate in the land and is preferred over the exemption: Nerpel's Appeal, 91 Pa. 334; Appeal of the City of Allentown, supra; Kauffman's Appeal, supra; Miller's Appeal, 122 Pa. 95; Rowe's Estate, 22 Pa. Superior Ct. 597; Titus' Estate, 18 D. & C. 344.

On the other hand, administration expenses are preferred over the exemption: Weir's Estate, 10 Pa. C. C. 187; McIntyre's Estate, 25 Dist. R. 139; Hurst's Estate, 25 Dist. R. 1054; Tomlinson's Estate, 31 D. & C. 366.

It, therefore, becomes necessary to ascertain whether the claim for the family exemption may be allowed in these circumstances.

Section 211 of the Fiduciaries Act of 1949, as amended, 20 PS §320.211, provides: "The spouse of any decedent dying domiciled in the Commonwealth, and if there be no spouse . . . then such children as are members of the same household as the decedent, may retain or claim as an exemption, either real or personal property, or both, not theretofore sold by the personal representative, to the value of one thousand dollars."

The contention by the judgment creditor that claimant here was not a member of decedent's household is without merit. Claimant testified that he lived with his mother until her death and on the day following her death he moved to his aunt's house. He was corroborated in this by his aunt, Mrs. Seligsohn. I am satisfied that claimant was a member of his deceased mother's household, and so find: Shank Estate, 399 Pa. 656 (1960). Dependency or age of the children is immaterial: Gehringer Estate, 10 D. & C. 279 (1928).

Sections 212 and 213 of the Fiduciaries Act provide for the payment of the family exemption out of personalty and realty, respectively. Section 214 provides for the proration of income when the family exemption does not exhaust the fund. Section 215, entitled: "Other

Remedies", provides: "The surviving spouse, child or children may also collect the exemption out of real and personal estate, together with income thereon, in the manner provided by law for the collection of legacies." Presumably it is this section that is being followed by the present claimant. The courts have from time to time allowed the claim for exemption at the audit provided there has been no laches or delay: Potts Appeal, 3 Walker 135; Fiddler's Estate, 14 Dist. R. 359; Hartley's Estate, 3 D. & C. 175; see Naylor's Estate, 27 D. & C. 541; McCarter's Estate, 36 D. & C. 625. However, the *confirmation of judicial sales fixes the rights of creditors whose debts are not thereafter affected by delay in distribution:* Arndt's Appeal, 117 Pa. 120; Golden's Estate, 56 Pa. Superior Ct. 300, 306; Wolff's Estate, 52 Pa. Superior Ct. 241, 244; Freeman's Estate, 7 D. & C. 59.

So, in Fuller's Estate, 37 D. & C. 252, the application to the Treasury Department, signed by the widow, requesting payment of adjusted service bonds to the undertaker, was held to be a waiver of the exemption out of those bonds.

In Kerr's Estate, 26 D. & C. 322 (1936), Judge Bok (now Mr. Justice Bok), then an associate judge of this court, dismissed exceptions to the adjudication of President Judge Marx who, specially presiding, disallowed credit for the child's exemption claim filed June 28, 1935, almost two years after the parent's death, on the basis that a delay of one year in making demand is a waiver of the right, citing Cram's Estate, 114 Pa. Superior Ct. 463 (1934). See also Naylor's Estate, supra.

On the other hand, in Katz's Estate, 49 D. & C. 215 (1944), the exemption claim was allowed the widow more than 20 months after decedent's death and a year and a day after the executrix qualified. The court there stated (pp. 215-216): ". . . the right of

the widow to her exemption is not to be defeated by her delay unless it is shown that her failure to assert her claim earlier was due to lack of diligence and that her delay prejudiced others ... See also McCarter's Estate, 36 D. & C. 625 (1939), where a delay of 19 months, not shown to have been prejudicial, was not permitted to defeat such claim. . . . The law is well settled that exemption statutes have been enacted in a spirit favorable to decedent's widow and children and should be interpreted in the benign spirit in which they are conceived. See opinion of Judge Klein (dissenting), in Bell's Estate, 34 D. & C. 200 (1938) (reversed in 139 Pa. Superior Ct. 11), and cases cited at page 203.

"Under the unfortunate circumstances existing in this case we are all of the opinion that the allowance of the widow's claim for exemption by the auditing judge must be sustained, *particularly in view of the absence of a showing that her delay caused any prejudice to the rights of any other parties in interest.*" (Italics supplied.)

It is important to note that in Katz, the estate was solvent; the rights of creditors and legatees were not prejudiced by the delay until the audit.

In Davies' Estate, 146 Pa. Superior Ct. 7 (1941), the family exemption was allowed to the widow out of an insolvent estate despite the protests of an over-diligent judgment creditor at whose behest letters testamentary were granted to a "straw" for the purpose of reviving the judgment. The court there stated at page 13:

"Whatever harm, if any, that the appellants [judgment creditors] have sustained was largely, if not entirely, due to the defective proceedings which they instituted, and not the result of the failure of the widow to promptly make her claim for exemption. *Before* the second sale occurred the judgment creditor and his at-

torney knew the claims and rights of the widow and assumed all risks in subsequent proceedings. . .

"The question of laches is determined on equitable principles and the widow's rights should only be defeated when it clearly appears that under all the attendant circumstances she failed to exercise due diligence and that her delay was prejudicial to others."

In Davies, the administrator appointed at the behest of the judgment creditor failed to advertise the grant of letters to him, and failed to notify or do anything to protect the rights of the widow entitled to the exemption. Such dereliction of duty by the fiduciary, it was held, did not prejudice the widow's right.

The inheritance tax affidavit filed by the accountant and produced at the audit, and the testimony of the accountant establish that the $1,000 family exemption was claimed as a deduction for tax purposes. However, this does not constitute a claim for the exemption to meet the requirements of the relevant sections of the Fiduciaries Act: Wraught Estate, 347 Pa. 165 (1943); Schwartz Estate, 166 Pa. Superior Ct. 549 (1950); Stokes Estate, 167 Pa. Superior Ct. 128 (1950).

Decedent's personal estate was the primary fund for the payment of the mortgage indebtedness: Mayer Estate, 81 D. & C. 273. While the restated account reflects the payment of the required monthly mortgage payments aggregating $112.95 (3 at $37.65) as to premises 2449 North Front Street, and $188 (4 at $47) as to premises 2638 North Front Street, it is evident (there being no other funds) that those payments were in fact made out of principal personalty and rental receipts. In the early stages of administration this was the plain duty of the fiduciary who was the trustee of the assets for the benefit of creditors and others having an interest. The attempt, therefore, by the personal representative to so slant the account as to "create" a fund for the allowance of the exemption cannot pre-

vail. The monthly credits for the mortgage payment are stricken from the restated account as there reflected, and are applied in the manner here indicated. There is, therefore, no principal personalty or rental receipts available from which to allow the exemption claim now made. The claim for exemption is therefore dismissed.

There is no authority in the law, in these circumstances, for the diversion of the proceeds of the sale of a parcel of real estate to the settlement of the liens on another to the detriment of lien creditors whose rights have become fixed by the prior sale: Wohlsen's Estate, supra. Furthermore, a serious question arises as to whether this court would have confirmed the public sale for $2,400 if *all* of the liens and charges applicable thereto had been presented to the court, as required by Supreme Court Orphans' Court Rule 129(a).

The accountant will, therefore, be surcharged for the application of the proceeds of sale of premises 2449 North Front Street to the extent of $771.94 ($658.99 balance of proceeds augmented by $112.95 representing three mortgage payments of $37.65 each charged to these proceeds but payable out of rentals as above), which will be awarded to Strawbridge and Clothier on account of its judgment lien, as above.

| | |
|---|---:|
| The account, as restated, shows a combined balance of | $314.55 |
| of which there is allowed to Alexander and Quell Company (bond premium) | 10.00 |
| leaving | $304.55 |
| to which add surcharge against the accountant in the sum of | 467.39 |
| making | $771.94 |

which is awarded to Strawbridge and Clothier on account of its claim.

470

Leave is hereby granted the accountant to execute and deliver all necessary transfers and assignments.

And now, May 1, 1962, the account is confirmed nisi.