## Fehr's Estate

*Robert C. Fluhrer,* for accountant.

*James J. Logan,* for children of Annie Truckenmiller, claimants.

*George Hay Kain* and *William H. Kain,* of *Kain, Kain & Kain,* for children of George Wren, claimants.

GROSS, P. J., July 9, 1943.—Inez V. Fehr, the testatrix, died February 19, 1934, leaving her last will and testament in writing, dated June 16, 1931, which was duly admitted to probate in the office of the Register of Wills of York County on June 29, 1936 . . . The will provides, in the sixth item thereof, as follows:

"Sixth: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situate, I give, devise and bequeath unto First National Bank, York, Pa., in trust, however, for the following uses and purposes:

"The income, after deducting taxes and expenses from this trust fund, shall be paid, semi-annually, to my son, George Fehr, during his life time, and upon his death the principal shall be paid and distributed one-fourth to my sister, Annie B. Wren, Kingston, Pennsylvania; one-fourth to my sister, Catherine Wren, Kingston, Pennsylvania; one-fourth to my brother, George Wren, Steelton, Pennsylvania; and

one-fourth to my sister-in-law, Annie Truckenmiller, Milton, Pennsylvania, or their heirs, with the understanding that my residence located at No. 55 North Queen Street, York, Pennsylvania, constituting part of this trust fund, may be occupied by my son free of rent, so long as he remains single, he to pay the taxes and necessary repairs, or if he does not desire to occupy my dwelling and is single, then the net rent received from said property shall constitute part of the income of my trust fund and be distributable as herein set forth. If my son, George, marries, the trustee shall deed my said dwelling to him absolutely. If my son dies and did not marry during his life time, the trustee shall sell my said dwelling at public or private sale and distribute the proceeds therefrom, together with the rest of the *corpus* of this trust, equally among my sisters, Annie B. Wren and Catherine Wren, my brother, George Wren, and my sister-in-law, Annie Truckenmiller, or the survivors of them, with the understanding that if any of these four be then dead leaving a child or children to survive, that such child or children shall receive the share of the deceased parent.". . .

The record shows the following undisputed facts:

1. Inez V. Fehr, the testatrix, was the wife of Charles Fehr, who died December 25, 1921. They had one child, a son, George N. Fehr, the life beneficiary of the trust fund created under the will of the testatrix. On November 20, 1922, George N. Fehr, the son, was adjudged a weakminded person by the Court of Common Pleas of York County, Pa., and his mother, the testatrix, and York Trust Company were appointed guardians of his estate. On June 11, 1931, said George N. Fehr, the son, went through a purported marriage with one Gertrude Cover, and on October 17, 1932, said Inez V. Fehr, the testatrix, was adjudged a weakminded person by the Court of Common Pleas of York County, Pa., and York Trust Company was appointed

guardian of her estate. Said George N. Fehr died December 19, 1942, thereby terminating the trust and necessitating the filing of this account. His wife, Gertrude Cover Fehr, died April 25, 1943.

2. Said Annie B. Wren, the sister of the testatrix, was, on December 30, 1931, declared a weakminded person by the Court of Common Pleas of Luzerne County, Pa., and Ebenezer Flack was appointed guardian of her estate. She died December 15, 1936, intestate, unmarried and without issue. Letters of administration on her estate have been granted to said Ebenezer Flack.

3. Said Catherine Wren, the sister of the testatrix, was, on December 30, 1931, declared a weakminded person by the Court of Common Pleas of Luzerne County, Pa., and Ebenezer Flack was appointed guardian of her estate. She died March 31, 1937, intestate, unmarried and without issue. Letters of administration on her estate have been granted to said Ebenezer Flack.

4. Said George Wren (George R. Wren), the brother of the testatrix, died July 27, 1938, intestate. No letters have been granted on his estate. He left to survive him his wife, Mary A. Wren and, as his only next of kin, the following children, to wit: (1) Jean McReath Wren, a daughter; (2) Inez Wren, a daughter; (3) Virginia Wren, a daughter; (4) K. Donald Wren, a son, who holds a power of attorney, a copy of which is attached to the record, to represent the interests of his mother and his aforesaid three sisters; (5) Christopher Wren, a son, who died February 13, 1942, without issue, leaving to survive him his wife, Etta S. Wren—he died testate and his last will and testament was probated on May 5, 1942, at Phoenix, Ariz.; (6) George Granville Wren, a son, who predeceased his father, the said George R. Wren, having died July 13, 1938, unmarried and without issue, at Muskogee, Okla.

5. Said Annie Truckenmiller, the sister-in-law of the testatrix, died January 29, 1893. Her husband, Peter

or Nathan Truckenmiller, died July 25, 1905. She left to survive her two children as her only next of kin, to wit, Inez B. Divel and Sarah T. Neuhard.

6. All of the above-named parties, except as noted, are still living, sui juris, and over 21 years of age.

7. It was also an admitted fact that Inez V. Fehr, the testatrix, had knowledge for years that Annie Truckenmiller, her sister-in-law, had died on January 29, 1893.

8. There was offered in evidence and admitted without objection Lunatics and Habitual Drunkards and Trust Estates Docket, vol. 10, in the Court of Common Pleas of York County, Pa., at page 235, wherein is recorded the joint petition of Inez V. Fehr and York Trust Company, guardians of the estate of said George N. Fehr, the weakminded son of the testatrix, filed on September 19, 1932, wherein the petitioners prayed the court to change the order of allowance theretofore made for the support and maintenance of said George N. Fehr and, inter alia, averred that he, the said George N. Fehr, "was married or went through a marriage ceremony with one Gertrude W. Cover, with whom the said George N. Fehr now resides."

At the hearing held on May 23, 1943, Sarah Jane Kyle, a daughter of said Sarah E. Neuhard and granddaughter of said Annie Truckenmiller, was called as a witness on behalf of her mother and her aunt, Inez V. Divel, and testimony was elicited, under objection, for two purposes: First, to show that all the moneys and property belonging to the estate of the testatrix had been received from her husband, Charles Fehr, and that he had acquired the same by his own earnings through the assistance of his mother, who loaned him money to go into the furniture business; and, second, that the testatrix made various declarations during the period of 10 to 14 years prior to her death, to the effect that she intended to give at least part of her estate to her husband's relatives.

Testimony as to the source from which a testator received his estate may become relevant testimony under certain circumstances where the ambiguity of a will is involved and has been received by the courts for the purpose of aiding the court in interpreting the true meaning of the words used by a testator in his will, but such testimony must be clear and certain in its terms denoting the source from which the money and property came.

As to the second purpose for which the testimony of the witness was offered, we think it is wholly irrelevant and immaterial. The testimony of the witness as a whole is vague, indefinite, and uncertain and lends no aid to the court in arriving at the true intention of the testatrix. We therefore sustain the motion to strike all of the witness' testimony out as made on pages 11 and 12 of the notes of testimony and grant an exception to the parties offering the same.

The ruling on the testimony of Sarah Jane Kyle is especially applicable to the testimony of the witnesses Charles H. Moore and J. Charles Heiges, and we therefore sustain the motions to strike out the testimony of both of these witnesses and grant an exception to the parties offering the same. . . .

The balance on the present account is personalty and income from personalty. This distribution requires our construction of the sixth, the residuary item of the will, under which the distribution is to be made. The real estate, 55 North Queen Street, York, Pa., referred to in said item as constituting part of this trust fund, was neither conveyed by the trustee to George (N.) Fehr, the son, nor has it been sold by the trustee and, therefore, as we view the question involved, the validity of the alleged marriage of said George (N.) Fehr, the son, is not now a question before the court.

Said item of the will creates a trust of "all the rest, residue and remainder" of the estate of the testatrix for the benefit of George (N.) Fehr, the son, during his lifetime, then directs as follows: "and upon his

death the principal shall be paid and distributed one-fourth to my sister, Annie B. Wren, Kingston, Pennsylvania; one-fourth to my sister, Catherine Wren, Kingston, Pennsylvania; one-fourth to my brother, George Wren, Steelton, Pennsylvania; and one-fourth to my sister-in-law, Annie Truckenmiller, Milton, Pennsylvania, or their heirs."

Pointing to the above-quoted dispositive clause of said item of the will, the widow and children of George (R.) Wren, the deceased brother, contend that the gifts of the residuary remainder in four equal shares are substitutionary; that the words "or their heirs" are words of purchase and not of limitation; that the heirs of the distributees must be determined at the death of George (N.) Fehr, the son, and the distribution of the balance in the account should be made as follows: One fourth to the four children of George (R.) Wren, as heirs of Annie B. Wren; one fourth to the same children of George (R.) Wren, as heirs of Catherine Wren; one third of one fourth to Mary A. Wren, widow of George (R.) Wren and two thirds of one fourth among the same four children of George (R.) Wren, as heirs of the said George (R.) Wren; one fourth to the two children of Annie Truckenmiller, the deceased sister-in-law.

On the other hand, the two children of said Annie Truckenmiller, deceased, contend that the above dispositive clause is not an independent disposition of the remainder of the trust but is expressly made dependent and conditional upon the remaining part of said item of the will, which reads as follows:

". . . with the understanding that my residence located at No. 55 North Queen Street, York, Pennsylvania, constituting part of this trust fund, may be occupied by my son free of rent, so long as he remains single, he to pay the taxes and necessary repairs, or if he does not desire to occupy my dwelling and is single, then the net rent received from said property shall constitute part of the income of my trust fund and be dis-

tributable as herein set forth. If my son, George, marries, the trustee shall deed my said dwelling to him absolutely. If my son dies and did not marry during his life time, the trustee shall sell my said dwelling at public or private sale and distribute the proceeds therefrom, together with the rest of the *corpus* of this trust, equally among my sisters, Annie B. Wren and Catherine Wren, my brother, George Wren, and my sister-in-law, Annie Truckenmiller, or the survivors of them, with the understanding that if any of these four be then dead leaving a child or children to survive, that such child or children shall receive the share of the deceased parent."

The two children of said Annie Truckenmiller, deceased, therefore maintain that the distribution of this fund must be made one half to the children of said George (R.) Wren, the deceased brother, and the other half equally between themselves.

The question involved presents the ever-occurring and troublesome one where there are apparent conflicting provisions in a will. Briefs have been submitted by counsel and cases cited to support their respective contentions which, in phraseology, are quite similar to the will of the testatrix.

It has frequently been said, however, that no will has a brother and that precedents render but slight help in the construction of a will for the reason that the same language used by one person to denote a definite meaning may, with the slightest change, be used by another to denote an entirely different meaning.

The solution of the problem presented by the apparent conflict between these dispositive clauses in the will must be found in applying the universal rule for the construction of all wills, that the intention of the testator must prevail and be arrived at from a consideration of the whole will and every word therein contained.

There are also certain other well-established secondary rules of construction, not arbitrary but founded

upon reason and justice, as follows: If it is possible to do so, effect must be given to every part of a will and none of it be treated as surplusage; where two provisions of a will are in irreconcilable conflict, a conclusion never to be reached unless it is unavoidable, the second must control, since it is the last expression of the desire of the testator; in cases of irreconcilable conflict a general clause must give way to one that is specific; in cases of ambiguity the situation of the testator and the facts and circumstances surrounding him at the time the will was executed are proper subjects for consideration; all mere technical rules of construction must give way to the plainly-expressed intention of the testator, and the law will impute to his words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice.

The foregoing principles of construction are well established and require no authority to support them. They have, however, been recently restated in Hirsh's Trust Estate, 334 Pa. 172, Prime's Petition, 335 Pa. 218, and Conner's Estate, 302 Pa. 534.

In applying the above principles of construction, let us first place ourselves in the position of the testatrix. Her will is dated June 16, 1931. She died February 19, 1934. Her estate consisted of personalty principally and an undivided one-half interest in her residence property referred to in the will as no. 55 North Queen Street, York, Pa., the other half interest being owned by her son, George (N.) Fehr, her only child, who was a weakminded person, having been adjudicated such by the Court of Common Pleas of York County on November 20, 1922, and the testatrix and York Trust Company were appointed guardians of his estate.

Undoubtedly, her son was the special object of her bounty and it is safe to assume that she was very desirous of seeing that her son would be taken care of, properly supported, and maintained as long as he lived, which, of course, was the purpose of creating the trust.

He had to have a home somewhere and was incapable of making one for himself. He was the owner of one half of the residence in which his mother, the testatrix, lived and, therefore, what was more natural than that his mother should wish him to continue to live in that home if he desired to do so, and if he did not desire to live in that home, then it was her desire that the same should be rented and the rent should constitute a part of the income from the trust and be given to him as long as he lived. Knowing that he was a weakminded person, she undoubtedly was apprehensive about his future welfare and that he might "marry" and therefore she provided that, if her son George "marries", the trustee shall deed this residence property to him absolutely, and, "if he did not marry during his lifetime" the trustee should then sell the residence property and distribute the proceeds therefrom "together with the rest of the *corpus* of this trust" as provided in the last sentence of said item of the will. Annie B. Wren and Catherine Wren, the two sisters of the testatrix, were unmarried and without issue, the first named having died July 15, 1936, and the second March 31, 1937. Both were declared weakminded persons on December 30, 1931, about six months after the date of the will, by the Court of Common Pleas of Luzerne County, and guardians were appointed for their estates. The testatrix lived over two years after her said sisters were declared weakminded persons and it is not unreasonable to assume that she had knowledge of their incapacity, that they were unmarried and without issue, and therefore desired to provide some means for their support and maintenance subsequent to the death of her son George. It is an admitted fact that the sister-in-law, Annie Truckenmiller, died January 29, 1893; that the testatrix knew of her death, and that she left to survive her two children; and also that her brother, George (R.) Wren, who died July 27, 1938, had a number of children, who must have all been born

many years before the death of the testatrix from the fact that they are all over 21 years of age.

Keeping all these facts and circumstances surrounding the testatrix at the time she made her will, and those arising between that date and the date of her death, in mind, we ask ourselves the question: Is it not agreeable to reason and justice to conclude that her probable intent, as expressed from a consideration of the whole sixth item of her will, was to create the survivorship between the remaindermen and the per stirpes distribution which are so clearly and unequivocally stated in the last sentence of said item?

Standing alone, the first disposition of the remainder of the trust in four equal shares might, by the use of the words "shall be paid and distributed", under the authority of Alburger's Estate (No. 2), 274 Pa. 15, create contingent remainders in the four named donees. On the other hand, the use of the words "or their heirs" might, under the authority of Knerr's Estate, 130 Pa. Superior Ct. 383, and Simpson's Estate, 304 Pa. 396, create vested remainders in the four named donees, but, by reason of the sisters, Annie B. Wren and Catherine Wren, having predeceased George (N.) Fehr, the life tenant, it becomes unnecessary to decide the question as in either event, if their construction of the will were accepted, the widow and children of George (R.) Wren would participate in the distribution upon the same basis either as substituted legatees under the will of the testatrix or as heirs of the deceased sisters and brother.

It is urged on behalf of the widow and children of the deceased brother, George (R.) Wren, that the testatrix, by directing in the first distributive clause "upon his death the principal shall be paid and distributed" to the four named persons "or their heirs," intended the distribution of the personalty fund only and that the distribution of the proceeds from the sale of the real estate should be made under the last distributive clause.

It is argued on their behalf that by adopting this view effect would be given to every word in said item of the will; that we would thus avoid treating at least 49 significant words contained in the first distributive clause as surplusage and also satisfy all the rules of construction of wills to which we have hereinbefore referred.

We cannot adopt this view as the solution to the problem involved. This item expressly constitutes the personalty and realty, or the proceeds from the sale of the same, the trust res. The disposition of the income and the remainder consists of but three sentences, in which there is complete continuity of thought linked together "with the understanding", to use the words of the testatrix, that certain things may happen and if they do certain things shall be done, and if they do not happen certain other things shall be done. That the testatrix intended two distinct schemes of the disposition of the remainder of the trust is not to be found merely to satisfy a rule of construction when such finding would be a strained construction and in contravention of what seems to be the clear import of the language used by her.

In the last distributive clause of the will the testatrix provided that after the sale of the real estate the trustee should "distribute the proceeds therefrom, together with the rest of the corpus of this trust, equally," etc. It is urged that the phrase "together with the rest of the *corpus* of this trust" is immaterial because it is set out between commas and therefore refers to the distribution theretofore provided and not to the distribution thereafter provided. We think this phrase is entitled to considerable weight in arriving at the true intention of the testator. The mere fact that it is set out between commas is of little consequence. The Supreme Court, in Tarter's Estate, 291 Pa. 458, in discussing the effect of punctuation in a will, quoting from Weidman v. Maish, 16 Pa. 504, 511, said (p. 461):

"The punctuation is the work of the scrivener; the distribution of the sense according to the context is the business of the court."

What is there said is also applicable here. Words and their ordinary meanings are of far greater importance than punctuation marks.

We are of the opinion that some real significance must be given to the phrase which we have just quoted. In 62 C. J. 1076, the various definitions of the word "together" have been collected as found in the Century Dictionary, Standard Dictionary, and Webster's Dictionary. We find that the word means "in company, the one with the other, with one another". The word also means "mutually, reciprocally". In one sense, the word means "into or in union with each other as wholes or parts so as to be combined or joined with each other; conjointly; in or into combination, conjunction, or union". In another sense, the word means "in the same place, or at the same spot". In still another sense the term may be employed as meaning "at the same moment of time; contemporaneously; simultaneously; without intermission". We have examined the 1943 edition of Webster's Unabridged Dictionary and there we find that the word "together" is defined as "in or into one company, assembly or body; one collection group; in or into association, union, etc., as to fasten, mix or chain together. Conjointly, as the family together earned $100,000 a week. In such manner or with such effect as to form or reveal a coherent, integral, or undivided whole; in or into a condition or state where the parts constitute a unit or organic whole. Into a compact mass as to fold, roll or squeeze something together; as a unit or sum; in the aggregate."

The words "together with," as pointed out in Corpus Juris, supra, "is a copulative expression, importing a close and inseparable union, meaning along with; in company with; in company or mixture with; in union, combination, or in union or combination with"; and

the latest edition of Webster's Dictionary defines "together with" as "in union with".

The phrase as used by the testatrix, when taken in connection with the context of the entire item, leads us to the conclusion that by it the testatrix meant to merge and consolidate the personalty funds with the proceeds from the sale of the realty into a common or unified fund and distribute the same as such under the last distributive clause.

We have been unable to find any Pennsylvania authority specifically interpreting the words "together with", but our interpretation seems to be in harmony with Rose v. Western Union Tel. Co. (Mo. App.), 38 S. W. (2d) 483, and Williams v. Best et al., 195 N. C. 324, 142 S. E. 2, 3.

The case of Simpson's Estate, 304 Pa. 396, has been cited by counsel on both sides as authority for their respective positions. It is true that there were two methods of distribution provided in that case and so recognized by the parties and the court, for the question was never raised. All that the Simpson case stands for is authority for the proposition that a legacy or devise to a particular person or his heirs will not lapse upon the death of the legatee or devisee before the testator; the gift is substitutionary and the only question is who are entitled to take. That case does not consider the principles involved in apparently conflicting provisions in a will.

The principle applied in a long line of cases in this State, as illustrated by Wraught Estate, 347 Pa. 165, 167, that "Where a testator in the first instance uses language which amounts to the granting of a fee simple estate, but by subsequent words indicates his intent to give a less estate, or to make the grant conditional, there is no rule which prevents the giving of effect to such intent", seems to be applicable to this case; and, as pointed out in Byrne's Estate, 320 Pa. 513, 516:

" 'The true test of the effect of language apparently at variance with other parts of the devise, is whether

the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import . . .' "

All of which brings us back to the universal rule of construction that the intent of the testator shall govern the construction of his will.

We are not persuaded that our construction of this will as already indicated would mean the nullifying or ignoring of 49 significant words contained in the first distributive clause in which the words "or their heirs" are used, for, as we view the last distributive clause, it is nothing more than the testatrix's definition or explanation of what she intended "or their heirs" to mean. It would be difficult for us to come to any other conclusion when giving consideration to the facts that the testatrix knew that her sister-in-law, Annie Truckenmiller, was dead leaving children to survive her, and that her two sisters were weakminded, unmarried, and without issue, and that her brother had children. Thus, reading the two distributive clauses together, we do not ignore or treat any word in either clause as surplusage. See Byrne's Estate, supra, where the word "absolutely" was used in a bequest and its construction and meaning interpreted in connection with a subsequent clause of the will cutting the bequest down to a life estate with power of consumption.

We are not impressed with the arguments of counsel for the children and widow of George (R.) Wren, deceased, based upon the expressions "if my son George marries" and "if my son dies and did not marry during his lifetime" for, as we view the entire context of the sixth item, the testatrix simply meant by those expressions that if the status of her son George after her death was that of a married man certain results would follow.

Our conclusion is, therefore, that the widow of George (R.) Wren, deceased, is not entitled to participate in this distribution; that one half of the balance in the account is distributable to the four children

of George (R.) Wren, deceased, in equal shares; and the other half of the balance is distributable to the two children of Annie Truckenmiller, deceased, in equal shares.